Calvin STUART, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary Department of Health, Education, and Welfare, Defendant.

Civ. A. No. 76CV220–W–4.

United States District Court, W. D. Missouri, W. D.

Jan. 20, 1978.

Stanley D. Rostov, Kansas City, Mo., for plaintiff.

E. Eugene Harrison, Asst. U. S. Atty., Kansas City, Mo., for defendant.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING CAUSE TO THE SECRETARY OF HEALTH, EDUCATION, AND WELFARE FOR THE APPLICATION OF CORRECT LEGAL STANDARDS, THE TAKING OF ADDITIONAL EVIDENCE AND THE MAKING OF ADDITIONAL FINDINGS OF FACT

ELMO B. HUNTER, District Judge.

This is an action under § 405(g), Title 42, United States Code, for review of a decision by the defendant Secretary of Health, Education, and Welfare denying plaintiff's application for disability benefits. It is the duty and function of the court, under the statutes defining the scope of its review, to search the administrative record for the purpose of determining whether the Secretary's determination that plaintiff has not been, or cannot be expected to be, disabled for a period of 12 months or more is supported by "substantial evidence." "The court shall have [the] power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing . . . [t]he court . . . may, at any time, on good cause shown, order additional evidence to be taken before the Secretary . . . ." See § 405(g), *supra*. In determining whether substantial evidence exists to support the administrative decision, the court should consider whether the evidence is such "as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and whether the claimant has been granted a fair and full opportunity to present the available material evidence of disability. *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974). With these principles in mind, the administrative record will be reviewed.

*Evidence Presented in the Administrative Proceedings*

█ Practically the only evidence which would support a finding of disability was

the testimony of plaintiff himself which was adduced in the administrative hearing of October 24, 1975. In this testimony, he stated that he was age 44 at the time of the hearing,[1] that he had completed the 8th grade in school; that, sometime in 1971,[2] he had to give up the occupation of barbering, which he had pursued for a period of 8 years, because pain in his back and legs disabled him from "stand[ing] very long" (Tr. 38); that he had previously worked for some 11 years as an automobile spray painter; that he had "had back trouble all my life just about," but it worsened in 1971 when "my leg started getting weak and gave out on me" (Tr. 39); that his pain "usually starts" "right in the right thigh mostly" and "probably" results from "a pinched nerve" (Tr. 42); that, because of his considerable back pain, he must wear a steel brace and cannot perform any bending, lifting or stooping (Tr. 42); that he additionally suffers pain in his hip (Tr. 47); that the cumulative effect of these various sources of pain is that he experiences pain sensations continually and "hurts all over" (Tr. 48); that he is unable to sleep (Tr. 44) or perform the least demanding household chores (*Id.*); and that, additionally, he suffers from hypertension and for some time past, from possible alcoholism[3] (Tr. 45). Plaintiff testified that, in 1971, his pain became so constant and intense that, even with intermittent frequent breaks from barbering during the working day, he was unable to continue in that occupation. (Tr. 43.)

█ If plaintiff's uncontradicted testimonial assertions could constitute a sufficient quantum of proof to show that he was unable to return to his former employment, "the burden [would shift] to the Secretary to prove that there is available some other kind of 'substantial gainful employment' which claimant is able to perform." *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975); *Timmerman v. Weinberger*, 510 F.2d 439, 443 (8th Cir. 1975); Annot., 22 A.L.R.3d 440 (1968). But, the testimony of the claimant "by itself is not enough; there must be medical corroboration of . . . disability." *Landess v. Weinberger, supra,* at 1189.

In the administrative proceedings now under review, however, in which the claimant bore the burden of proving the onset of a disability on or before March 31, 1975, (when he last met the "special earnings requirement")[4] virtually no "medical corroboration" was presented. All of the medical reports presented are of a vintage considerably later than 1971; the earliest is dated September 25, 1974, and only that report and another dated March 12, 1975, relate to the period prior to March 31, 1975. Further, the reports do not fully develop and explore the symptoms of the plaintiff so that an accurate determination of the severity of plaintiff's combination of impairments might reasonably be made.

The report of September 25, 1974, for instance, consists, in its most material and most fully-developed part, solely of sparse interpretations of x-rays of plaintiff's lumbar spine, cervical spine, and left hip. With respect to the hip, it is noted that the x-rays reveal "no unusual changes." (Tr. 126.)

---

1. See Tr. 22.

2. Although plaintiff initially claimed in his application that his disability commenced on October 30, 1973, (Tr. 94) he presented, in his testimony in the administrative hearing, a claim that he had actually been unable to work since 1971 because of his pain and other impairments. (Tr. 39, 51–52.)

3. Plaintiff testified, in the course of the administrative hearing, that he had, in the past, had a considerable alcohol problem, averaging "a fifth of whiskey a day" (Tr. 59), and that he had done this for "a year or two." These allegations merit further evidentiary attention for alcoholism may be disabling, particularly in combination with other ailments, when it prevents substantial gainful activity for a period of 12 months or more. *Griffis v. Weinberger*, 509 F.2d 837 (9th Cir. 1975); *Marion v. Gardner*, 359 F.2d 175 (8th Cir. 1966).

4. See § 423(c)(1)(B), Title 42, United States Code, to the following pertinent effect: "An individual shall be insured for disability insurance benefits in any month if . . . he had not less than twenty quarters of coverage during the forty-quarter period which ends with the quarter in which such month occurred."

The x-ray of the lumbar spine, however, showed:

"old fractures of the tenth and eleventh bodies with particular compression in the twelfth dorsal body . . . irregular spur formation about the anterior margin of the lumbar bodies. The dorsal curvature is increased." (Tr. 126.)

In the cervical spine, there was "irregular spur formation about the anterior margin of the lumbar bodies." (*Id.*)

The report of March 12, 1975, rendered by Frank H. Ise, M.D. adds little to those sketchy interpretations. As summarized in the administrative record, it notes that plaintiff complains of "intermittent pain in the lower back which radiates into the left hip and down the left calf"; that "x-rays . . . show . . . a healed fracture of the 11th and 12th thoracic vertebrae"; and that, in Dr. Ise's opinion, the plaintiff is able to do "sedentary work."[5] (Tr. 127.)

The other medical evidence in the administrative records is comprised almost wholly[6] of records of plaintiff's hospitalization in the Veterans Administration Hospital in Kansas City, Missouri, in June and July 1975, at which time he was suffering from a number of ailments including gastritis "due to ethanol usage" (Tr. 133) following a history of drinking from a pint to a fifth of whiskey daily (Tr. 134, 162); hypertensive diastolic blood pressure which consistently ranged in excess of 100 mm. Hg.[7]; "degenerative arthritis of the spine" (Tr. 148); back and leg pain (Tr. 141, 148); progressive fusion of the spinal column[8] (Tr. 163); mental depression (Tr. 164); and "moderate scoliosis."

### The Administrative Decision

■ On the basis of this sparse administrative record, the administrative law judge rendered his written decision on December 2, 1975, to the effect that plaintiff "is not entitled to disability insurance benefits." (Tr. 9.) The primary ground for this determination was that "[t]here is no medical evidence in the file with respect to claimant's physical condition prior to September

---

**5.** It is well established that, in determining the severity of an impairment or impairments, the administrative law judge is not bound by medical opinion, *Sykes v. Finch*, 443 F.2d 192 (7th Cir. 1971), and is, rather, required to make his own determination. This is particularly so when the physician rendering the opinion, as in the case at bar, has denoted his examination to only one of a number of impairments suffered by the claimant. See *Landess v. Weinberger*, 490 F.2d 1187, 1190 (8th Cir. 1974).

**6.** See Tr. 131–167 and 175–210. The records included in this section also contain entries relevant to plaintiff's condition in May, August, and September of 1975.

**7.** Under the regulations of the Secretary of Health, Education, and Welfare, diastolic pressures which are consistently in excess of 100 mm. Hg. may without more, constitute compensable disability when accompanied by one or more of the following: Hypertensive retinopathy evidenced by hemorrhages, or cotton wool patches, with reduction in the caliber of the arterioles and arteriovenous crossing defects (or papiledema); or Impaired renal function as described under the criteria in § 6.02; or Cerebrovascular damage as described under the criteria in § 11.04; or Congestive heart failure as described under the criteria in § 4.02; or Angina pectoris as described under the criteria in § 4.06, § 4.07, or § 4.08. See § 4.03, Subpart I, Appendix, Title 20, Code of Federal Regulations; § 416.906, Title 20, Code of Federal Regulations. ("With respect to § 416.901(b)(1), the Listing of Impairments in the Appendix to this Subpart I describes for each of the major body systems, impairments which: (1) Are of a level of severity which can justify a finding that the individual is disabled, except where other evidence rebuts such a finding; and (2) Are expected to result in death or to last for a continuous period of not less than 12 months.") The administrative record in its present state reflects diastolic pressures in excess of 100 mm. Hg. on June 2, 1975 (Tr. 133); May 16, 1975 (Tr. 143, 144); May 23, 1975 (Tr. 146); July 8, 1975 (Tr. 154); July 24, 1975 (Tr. 155); and several other dates on which measurements were taken. This evidence of hypertension invites greater attention and exploration in more detail, for high blood pressure in combination with other impairments may constitute a disability, even if all the requirements of § 4.03, *supra*, are not met.

**8.** See § 1.04, Subpart I, Appendix, Title 20, Code of Federal Regulations, indicating that this condition alone may approach the severity necessary to constitute a disability. When considered with other concurrent impairments which occurred prior to March 31, 1975, the combination of impairments may constitute a disability.

1974, and it is claimant's burden to present such evidence. His self-serving allegations of disability are not of themselves sufficient under the law to support a finding of disability . . . "[9] (Tr. 8.) Therefore, the administrative law judge held that "the *objective* medical findings fail to establish [that] claimant's diagnosed conditions are so severe as to be disabling within the meaning of the Social Security Act of 1969, as amended." (Tr. 9.) (Emphasis added.)

A second ground of the administrative law judge's decision is that, even if all plaintiff's subjective complaints should be accepted as true—which would admittedly demonstrate the plaintiff's inability to return to his former employment as a barber [10] —he would still, in the opinion of a vocational expert who testified in the administrative hearing, retain the residual capacity to work as a "hotel desk clerk" involving "intermittent sitting and standing," an electronic device assembler, and as a parking lot attendant. (Tr. 72–3.) These jobs, according to the vocational expert, occur in significant numbers in the Kansas City area.[11] Admittedly, however, the testimony of the vocational expert does not take into consideration the "subjective" effects of plaintiff's pain.[12] (Tr. 73.)

On February 11, 1976, the decision of the Administrative Law Judge was affirmed by the Appeals Council of the Social Security Administration without further opinion. Therefore, "the hearing decision stands as the final decision of the Secretary . ." (Tr. 3.)

### Judicial Review

It is most materially noteworthy from the administrative record that plaintiff's testimony evidenced the possible availability of "medical corroboration" of his testimony for the period from 1971 to September 1974. Thus, plaintiff testified that in respect to the year 1971 "[t]he doctor I was going to the most was Carl Peterson" and it was noted that there was no report of Dr. Peterson in the file. (Tr. 52.) Further, the existence of the sketchy reports for the later periods is evidence that more complete but unreported medical data may exist for that period.

Under such conditions, when an insubstantial administrative record has been made, but there is evidence of other available evidence which may be determinative of or material to the question of disability, the courts have with some consistency held that the case should be remanded to the Secretary for the gathering and recording of the other existing evidence. *Landess v. Weinberger, supra; Heisner v. Secretary of Health, Education and Welfare,* 538 F.2d 1329, 1332 (8th Cir. 1976); *Hess v. Secretary of Health, Education and Welfare,* 497 F.2d 837, 840 (3d Cir. 1974). It is, of course, fundamental that a disability claimant bears the burden of producing substantial evidence to support his claim of medically determinable physical or mental impairments of sufficient severity to prevent his engaging in substantial gainful activity for a period of 12 months or more. *Miller v. Finch,* 430 F.2d 321, 323 (8th Cir. 1970). If he fails to sustain that burden, under ordinary circumstances, his claim should be denied. See *Blalock v. Richardson,* 483 F.2d 773 (4th Cir. 1972). But, it is equally fundamental that plaintiff should be given a full and fair opportunity to present the information which would sustain his claim. "Were hearing procedures [must be] fair and lawful?" *Pollard v. Gardner,* 267 F.Supp. 890, 903, (W.D. Mo.

---

9. It is error to characterize the claimant's testimony as inherently self-serving solely because it is subjective. *Thorne v. Weinberger,* 530 F.2d 580, 583 (4th Cir. 1976); *Longo v. Weinberger,* 369 F.Supp. 250, 265 (E.D. Pa.1974).

10. See Tr. 71, where the vocational expert states that, if plaintiff's testimony is accepted, he would not be able to return to "his occupation as a barber."

11. Tr. 75–6.

12. See Tr. 73, where the vocational expert states that his testimony respecting plaintiff's ability to perform work other than barbering does not "get into the subjective nature of pain."

1967). His ability and opportunity to present evidence should not be frustrated by the failure to gather evidence which exists. Here, as in *Landess v. Weinberger, supra*, at 1189, "the evidence *gathered* . . from . . . physicians does not in any way develop the extent of her disability." (Emphasis in original.) It is the unassignable duty of the administrative law judge, under these circumstances, to ensure that the material evidence is gathered. "[O]ur recent decisions have made it clear that the hearing examiner has a duty to fairly and fully develop the matters at issue . . . The administrative law judge in social security cases is in the peculiar position of acting as adjudicator while also being charged with developing the facts." *Landess v. Weinberger, supra*, at 1189. This rule is especially applicable when, as in the case at bar, the evidence which has been presented shows a reasonable possibility that a showing of disability may ultimately be made.[13]

■ Furthermore, there are several legal errors in the administrative decision which also warrant remand of this action and which should now be mentioned in order to obviate their repetition on remand. Perhaps the foremost of these are the above-quoted statements of the administrative law judge to the effect that *objective* medical evidence is necessary to establish a disability and that, therefore, plaintiff's subjective complaints need not be considered. Judicial decisions provide an unbroken chain of authority to the contrary. It is not necessary that a disability claim be established by objective medical findings. *Haskins v. Finch*, 307 F.Supp. 1272, 1279 (W.D. Mo.1969), and cases there cited. "[O]bjective medical findings, or the lack of them, are to be considered not in isolation, but along with the claimant's subjective complaints, medical opinion evidence, and the claimant's general background." *Lack-*

*ey v. Celebrezze*, 349 F.2d 76, 79 (4th Cir. 1965). "Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971). Therefore, if pain or other subjective symptoms can be demonstrated by recognized clinical or laboratory diagnostic techniques, as required by § 423(d)(3), Title 42, United States Code,[14] they alone, if sufficiently severe, may constitute a disability. "Pain, in itself, may be a disabling condition." *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). It is true that an administrative law judge may choose to disbelieve a claimant's testimony respecting subjective pain or other symptoms. *Reyes Robles v. Finch*, 409 F.2d 84, 87 (1st Cir. 1969). But such testimony cannot be dismissed as inadmissible[15] and, rather, "must be considered seriously" without being "entirely discounted because of weak [or no] objective findings." *Thorne v. Weinberger*, 530 F.2d 580, 583 (4th Cir. 1976). Further, rejection of the testimony on the grounds of credibility must be accompanied by a specific finding to that effect, *Baerga v. Richardson, supra*, at 312, supported by a specific, cogent reason for the disbelief. *Lund v. Weinberger, supra*, at 785–6.

■ Second. Evidence of disability cannot be reckoned as inadmissible simply because it is based upon examination or findings, or both, which are made after the date when the "special earnings requirement" was last met. Such evidence may constitute some proof of an impairment or impairments which existed prior to the time of examination and diagnosis and, possibly, before the expiration of the last date on which the "special earnings requirement"

---

13. See, e.g., notes 6 and 7, page 846, and note 8, page 846, *supra*.

14. That subsection reads as follows: " . . . a 'physical or mental impairment' is an impairment that results from anatomical, physiologi-

cal, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

15. See note 9, page 847, *supra*.

was met.[16] Thus, proper application of this principle may ultimately warrant a finding that the possible impairments first recognized after March 31, 1975—including possibly hypertension,[17] alcoholism,[18] and depression[19]—existed prior to that date. If so, they should be considered *in combination with* plaintiff's pain in determining the severity of plaintiff's impairments and the onset date of any period of disability which may be found.[20] *Landess v. Weinberger, supra; Haskins v. Finch, supra,* at 1287.

■ Third. The administrative law judge should require the physicians having knowledge of plaintiff's condition, past and present, to submit medical reports which are as complete as possible and which contain the specific findings which are necessary for them to be credited. See *Landess v. Weinberger, supra,* at 1189, to the following effect:

> "Experience with our adversary trial system has long demonstrated that naked conclusions and opinions by medical experts are often subject to reserved and unwritten qualifications requiring searching evaluation."

■ Finally, in taking the vocational expert's testimony, for the reasons stated above, the administrative law judge must permit the expert to consider plaintiff's credible subjective symptoms and all other credible evidence of record bearing upon the residual capacity for employment.[21]

It is therefore

ORDERED that defendant's motion for summary judgment be, and it is hereby, denied. It is further

ORDERED that this cause be, and it is hereby, remanded to the Secretary of Health, Education, and Welfare for the taking of additional evidence and the making of additional findings on the application of proper legal standards.[22]

---

**16.** See, e.g., *Davion v. Celebrezze*, 340 F.2d 606 (5th Cir. 1965).

**17.** See note 7, page 846, *supra*.

**18.** See note 3, page 845, *supra*.

**19.** See Tr. 164 for the notation that plaintiff, sometime after he failed to meet the special earnings requirement was depressed. Depression can constitute a medically determinable impairment and, under certain conditions, may be disabling. See § 12.03 Subpart I, Appendix, Title 20, Code of Federal Regulations. Evidence should therefore be taken on which this condition existed prior to March 31, 1975, and, if so, how severe it was.

**20.** See note 4, page 845, *supra*.

**21.** "We think it fundamental, when the ALJ uses a hypothetical question in examining the vocational expert, that the ALJ relate with precision the job capacity and opportunity to the physical and mental impairment of the particular claimant." *Daniels v. Mathews*, 567 F.2d 845 (8th Cir. 1977).

**22.** According to plaintiff's brief, additional evidence may also be obtained from one or more other physicians.