**Helen LEWIN, Plaintiff-Appellant,**

v.

**Richard S. SCHWIEKER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 80–5011.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 2, 1981.

Decided Aug. 27, 1981.

Stephen P. Wiman, Channel Counties Legal Services Asso., Oxnard, Cal., for plaintiff-appellant.

Jerry J. Bassett, Dept. of Health & Human Services, San Francisco, Cal., for defendant-appellee.

Before ALARCON and BOOCHEVER, Circuit Judges, and THOMPSON,* District Judge.

BOOCHEVER, Circuit Judge:

In 1974, when the state Aid to the Totally Disabled program (ATD) was converted to the federal Supplemental Security Income benefits program (SSI), the Social Security Administration (SSA) began sending SSI checks to Helen Lewin in an amount more than that to which she was entitled. Upon learning of the error, the SSA sought recovery of the overpayment.[1] A hearing was held before an administrative law judge (ALJ) who held that Lewin was not without fault in causing the overpayment and therefore not entitled to keep it. This decision was affirmed by the SSA's Appeals Council and the district court. The principal issue in this case is whether the finding that Lewin was not without fault is supported by substantial evidence. We hold that it was not supported and reverse.

The evidence presented at the administrative hearing showed the following. Lewin was born in 1931 and was 47 years old at the time of the hearing. She began receiving benefits under the ATD program because of mental and physical disabilities. Her initial application was completed by a social worker. Because the social worker did most of the work to obtain the benefits, Lewin knew little about the program or its requirements. Additionally, she received disability benefits under Title II of the Act.

In 1968, Lewin spent two months in a state hospital where she was diagnosed as a schizophrenia reaction, paranoid type. Since her discharge, she has visited a health center. Testimony, confirmed by medical reports, indicted that she suffered from impaired thinking processes.[2] Her diagnosis at the time of the SSA hearing remained the same.

In January, 1974, the state ATD program was converted to the federally administered SSI program. Because of a mix-up, a common occurrence during the conversion process, she was paid $266 per month rather than $67. She testified that during 1974 she called the social security office at various times to see if everything was correct

---

* Honorable Bruce R. Thompson, Senior United States District Judge for the District of Nevada, sitting by designation.

1. The Social Security Act provides that if the Secretary overpays an individual, the Secretary may make such provision as is appropriate. 42 U.S.C. § 1383(b)(1). This provision of the Act is implemented by 20 C.F.R. § 416.550. 20 C.F.R. § 416.552 defines the term "without fault", while 20 C.F.R. § 416.553 and .554 define "defeat the purpose" and "against equity and good conscience."

Under the regulations repayment may be avoided only if the individual sustains the burden of proving that: (1) the person was without fault *and* (2) recovery would defeat the purpose of the Act, be against equity, or impede efficient administration of the Act. *See Sierakowski v. Weinberger,* 504 F.2d 831, 836 (6th Cir. 1974); *Kendrick v. Califano,* 460 F.Supp. 561, 570 (E.D.Va. 1978).

2. *See* footnote 4, *infra.*

and was told yes. In a questionnaire, she stated that she received several letters confirming her entitlement to the greater amount. She also testified that in 1974 her mental condition was poor. Her psychiatrist had placed her on medication to combat depression. In June, 1975, Lewin again inquired regarding the level of her benefits and at that time the SSA first learned of the overpayment.

Under the applicable regulations, even though overpayment was initially caused by the Secretary, the claimant is not necessarily relieved from fault. The ALJ gave three reasons for his conclusion that Lewin was at fault: (1) because of the large overpayment, Lewin should have been aware of the mistake; (2) she did not report the change in payments until a year and a half after their initial receipt; and (3) she had been uncooperative in resolving the matter since that time. The ALJ discounted Lewin's mental condition because of her behavior at the hearing where she was "fully oriented."

Lewin contends the conclusion is wrong because she could not have reasonably been excepted to know that the amounts were incorrect. In support of her argument, the notes: (1) she took no part in the initial application process, did not understand the program, and never received any information regarding the SSI program; (2) the Secretary made the initial error in issuing her the incorrect amount and compounded the error by sending letters confirming that the amount was correct; (3) she called the SSA in 1974 and was told the amounts were correct; (4) given her mental condition in 1974, she could not reasonably be expected to know of the Secretary's mistake; and (5) the amounts of her checks were constantly changing. Additionally she argues that her uncooperativeness, upon which the Secretary relied, took place in a period totally unrelated to the pertinent overpayments.[3] Lewin also notes that although under the general regulations it is not presumed that a recipient is without fault even if the

agency initially caused the overpayment, the recipient, according to the SSA claims manual, is presumed to be without fault where, as here, the overpayment occurred during the conversion process from the state to the federal program. Although the ALJ did not apply this special presumption, we do not view this as necessarily determinative as the claims manual is an internal agency guide without the force and effect of a statute or regulation. *See Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981); *Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974); *Watson v. Califano*, 487 F.Supp. 179, 184 (S.D.N.Y. 1979), *aff'd*, 622 F.2d 577 (2d Cir. 1980); 5 U.S.C. § 706(2)(E).

The standard of review to be applied in determining whether the Secretary's decision is supported by substantial evidence was explicated in *Cox v. Califano*, 587 F.2d 988, 989–990 (9th Cir. 1978) (citation omitted):

Substantial evidence means that a finding is supported by "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." In applying the substantial evidence test we are obligated to look at the record as a whole and not merely at the evidence tending to support a finding.

*See, e. g., Embry v. Secretary of HEW*, 626 F.2d 93, 94 (9th Cir. 1980).

Applying that standard of review, we believe that the Secretary's decision is not supported by substantial evidence. Virtually all of the evidence suggests to us that Lewin was without fault. The main factor weighing against this conclusion is that because the amount of her benefits check was quadrupled during the conversion process, she should have known that she received an overpayment. This belief is substantially undercut by the facts of this case. At the time that she received the

---

**3.** In any event, she argues that the conduct is consistent with her diagnosed condition of paranoia.

payments: (1) she was mentally disabled[4] and had very little knowledge of the program;[5] (2) because she was converted to a new program she might reasonably believe that she was entitled to the checks, especially when the amount of the checks that she received had often changed;[6] (3) and she received award letters from the SSA confirming that the amount received was correct.

Assuming that Lewin should have known that she might have received an overpayment, the reasonable step to take was to report the possibility. Lewin testified that she did call the agency in 1974 on several occasions to ask them to go over her file "to see if everything was correct." She was informed that it was correct. The ALJ stated, however, that she "apparently did not report this [the overpayment] until June 1975, . . . causing a large . . . overpayment." The ALJ neither mentioned her testimony to the contrary nor at any point in his decision discredited her testimony.

This failure to make adequate findings pervades the ALJ's decision.

■ The circuit courts have consistently recognized the need for full and detailed findings of facts essential to the Secretary's conclusion.[7] The problem was considered by the Third Circuit in *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979) (footnotes omitted):

In *Baerga v. Richardson*, 500 F.2d 309 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975), this Court . . . criticized the hearing examiner for submitting a four-page summary of the evidence followed by cursory findings of fact without explicit statements as to "what portions of the evidence he accepted or rejected." *Id.* at 312. We are aware of the large volume of disability cases that the agency must adjudicate. Nevertheless, each case represents a citizen's claim of serious disability, and this factor imposes on the agency and the courts the responsibilities set out in *Baerga*:

---

**4.** We refuse to discount Lewin's mental condition. The ALJ discounted her documented condition because she appeared fully oriented at the hearing. This is not a reliable indicator of her condition at the time of the overpayment. Dr. Capper, in his report of September 25, 1978 stated "She has in the last few years been extremely depressed as well as having impaired thinking processes." In any event, Lewin testified that in 1974 she was suffering a paranoia, psychotic reaction and stated: "I was not sure what actually was going on. I was confused about everything." This testimony was corroborated by medical reports. There was no conflicting evidence. We believe the ALJ's "finding" on this matter is without any support in the record. *See Dobrowolsky v. Califano*, 606 F.2d 403, 409–10 (3d Cir. 1979) (finding regarding physical disabilities not supported by substantial evidence); *Padillo v. Califano*, 461 F.Supp. 37, 39 (E.D.Pa. 1978) (if ALJ disbelieves uncontradicted testimony of claimant or the doctor's diagnoses, the ALJ must give adequate reasons).

We also believe that even assuming that Lewin may have been obstreperous during the recoupment process, that may not be held against her since it is irrelevant in determining whether she was at fault in connection with the overpayment.

**5.** The Fifth Circuit has noted that the Act is difficult for the knowledgeable to comprehend. *Burrow v. Finch*, 431 F.2d 486, 493 (8th Cir.

1970) (the "Act is a maze of complicated terms and cross references which can easily confuse the practicing attorney, much less the widow and child or other untrained beneficiaries"). *See also Kendrick v. Califano*, 460 F.Supp. 561, 572 (E.D.Va. 1978) (without proof to the contrary, there was no basis for concluding that claimant understood instructions because the "Act is an exceedingly complex and detailed law, and the Secretary cannot arbitrarily assume that plaintiff understood its application to his particular situation").

**6.** As noted, the SSA's claims manual recognizes that this is a reasonable belief. *See* text *supra*.

**7.** *See Hall v. Secretary of H.E.W.*, 602 F.2d 1372, 1379 (9th Cir. 1977) ("incumbent on Secretary at a minimum, to come forward with specific findings"); *Small v. Califano*, 565 F.2d 797, 801 (1st Cir. 1977) ("Secretary has obligation both to claimants and to reviewing courts to make full and detailed findings in support of his ultimate conclusion"); *Thorne v. Weinberger*, 530 F.2d 580, 582 (4th Cir. 1976); *Choratch v. Finch*, 438 F.2d 342, 343 (3d Cir. 1971) ("not too much to require that an administrative decision . . . be supported by explicit findings of all facts that are essential to the conclusion"); *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964).

[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence. It is incumbent upon the examiner to make specific findings—the court may not speculate as to his findings.

The rule has been applied to credibility determinations and the courts have consistently required that there be an explicit finding whether the Secretary believed or disbelieved the claimant whenever the claimant's credibility is a critical factor in the Secretary's decision.

> It is true that an administrative law judge may choose to disbelieve a claimant's testimony ... But such testimony cannot be dismissed as inadmissible and, rather, "must be considered seriously" without being "entirely discounted because of weak [or no] objective findings." Further, rejection of the testimony must be accompanied by a specific finding to that effect, supported by a specific, cogent reason for the disbelief.

*Stuart v. Califano*, 443 F.Supp. 842, 848 (W.D.Mo. 1978) (citations and footnote omitted).[8]

Because the ALJ's decision neither expressly discredits Lewin's testimony nor articulates any reasons for questioning her credi-

bility, and fails to indicate the amount of weight given to various items of evidence, it cannot stand.

The failure to make adequate findings would at least necessitate a remand for a redetermination of fault. If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal is appropriate.[9] This decision lies within the discretion of the court.[10]

The record here has been thoroughly developed and we see no reason for remand. Even if we were to assume that the ALJ questioned her credibility, where, as here, the evidence on her side is so strong, we would hold that the ALJ failed to give proper weight to her testimony. Except for the sizeable increase in the amount of the checks, all other evidence shows that Lewin was without fault. "There may have been a scintilla of evidence indicating some fault on [Lewin's] part, but it is nothing more." *Rini v. Harris*, 615 F.2d 625, 627 (5th Cir. 1980). In deciding against a remand in *Rini*, the court's comments are particularly apropos here:

> We feel, however, that this case has gone far enough. The fault in this case belongs at the agency's doorstep. Rini testified that he didn't know when the trial period terminated. He relied on the explanation that the people at Social Security must know what they are doing. In this instance he may have been in error,

---

8. *See Mark v. Celebrezze*, 348 F.2d 289, 292–93 (9th Cir. 1965); *Padillo v. Califano*, 461 F.Supp. 37, 39 (E.D.Pa. 1978); *Dunbar v. Califano*, 454 F.Supp. 1261, 1266–67 (W.D.N.Y. 1978); *Roberts v. Califano*, 439 F.Supp. 188, 191–92 (E.D.Pa. 1977); *Torelli v. Weinberger*, 423 F.Supp. 606, 610 (E.D.Pa. 1976); *Saldana v. Weinberger*, 421 F.Supp. 1127, 1132 (E.D.Pa. 1976); *Storck v. Weinberger*, 402 F.Supp. 603, 607 (D.Md. 1975); *Selewich v. Finch*, 312 F.Supp. 191, 195 (D.Mass. 1969) ("whenever the question of claimant's credibility is a critical factor in the Secretary's decision of the case the Secretary should make clear whether he believed or disbelieved the claimant");

*Goodwin v. Gardner*, 250 F.Supp. 454, 459 (N.D.Cal. 1966). Cf. *Acevedo Ramirez v. Secretary of HEW*, 550 F.Supp. 1286, 1287 (1st Cir. 1977) (where claimant's testimony regarding pain was clearly, though implicitly discredited, no explicit finding is necessary.

9. *See, e. g., Rini v. Harris*, 615 F.2d 625, 627 (5th Cir. 1980); *Bastien v. Califano*, 572 F.2d 908, 913 (2d Cir. 1978); *Gold v. Secretary to H.E.W.*, 463 F.2d 38, 44 (2d Cir. 1972); *Dunbar v. Califano*, 454 F.Supp. 1261, 1268–69 (W.D. N.Y. 1978).

10. *Id.*

but if so, the error was nevertheless a reasonable one. Taking into account the nature of his disability, his education, his past experiences and his other limitations that his testimony make apparent, the Secretary's claim that Rini acted unreasonably in not knowing that he was being overpaid offends both equity and good conscience.

Our conclusion is further supported by the decision in *Kendrick v. Califano*, 460 F.Supp. 561 (E.D.Va. 1978). In *Kendrick*, the claimant, who suffered from leukemia and anemia, began receiving supplemental security income payments in late 1975 and disability insurance benefit payments in April, 1976. The claimant underwent intense treatment and apparent complete remission occurred. He felt well enough to perform some work between periods of hospitalization. He reported his work record to the SSA. In November, 1976, the SSA notified him that it was investigating his work activity and that the investigation might result in termination of benefits. Thereafter, the SSA determined that the claimant was never entitled to any benefits because he had returned to substantial gainful work in March, 1976, and consequently, it sought repayment.

At the hearing before an ALJ, the claimant testified that he called the local office and inquired as to what effect work would have on his entitlement to benefits. He was told by several personnel that working would not affect his eligibility. The claimant's mother corroborated his testimony. Nevertheless, the ALJ determined that the claimant was not without fault for two reasons. First, the ALJ stated that he was convinced that although the claimant and his mother called the office, they must have misinformed SSA personnel, leaving an incorrect impression. Second, the ALJ believed that claimant knew or should have known that the payments were incorrect because the claimant and his mother were intelligent enough to understand the instructions which they had received.

The court rejected the first reason because no evidence supported the Secretary's conclusion that the claimant and his mother withheld relevant and critical information. The court noted that although credibility choices are for the Secretary to decide, there was a total absence of contradictory evidence. Similarly here, the plaintiff testified that she called the local office at various times during 1974 to find out if the payments were correct. There is no contradictory evidence. She also went to the office in 1975 to inquire if the benefit level was correct. Moreover, during this time the Secretary sent her award letters confirming that the amount she received was correct.

In *Kendrick*, the court also rejected the second reason given by the ALJ that the claimant should have known that he was overpaid because of the instructions in pamphlets that he had received. The court noted that: (1) the pamphlets were never introduced into evidence although the Secretary might have subpoenaed them; (2) the claimant was never even asked what pamphlet, if any, had been received; and (3) the Secretary cannot arbitrarily assume that the plaintiff understood the Act's application to his particular situation. Here the ALJ arbitrarily assumed that Lewin understood the Act's operation in the face of directly contradictory evidence. Lewin testified that she did not understand the Act and, in fact, she did not actively participate in the application process. Lewin was also suffering mental problems at the time of the overpayment. Moreover, the benefit program itself was in a state of flux at this time, a fact recognized by the SSA's own claims manual. We hold, like the court in *Kendrick*, that there is no basis for concluding that Lewin was not without fault.[11]

Accordingly, the judgment of the district court affirming the decision of the Secretary is REVERSED for lack of substantial evidence. The case is REMANDED to the

---

11. *See also Michalak v. Weinberger*, 416 F.Supp. 1213 (S.D. Texas 1976); *Cucuzzella v. Weinberger*, 395 F.Supp. 1288 (D.Del. 1975).

district court with directions to enter judgment for Lewin.