**Abraham RAND, Marion Rand, Plaintiffs–Appellants,**

v.

**Louis W. SULLIVAN,\* Secretary, Defendant–Appellee.**

No. 89–56162.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 4, 1990.\*\*

Memorandum Filed Dec. 7, 1990.

Order and Opinion Filed Jan. 23, 1991.

---

\* Dr. Louis W. Sullivan has replaced Dr. Otis R. Bowen as the defendant/appellee in this case pursuant to Fed.R.App.P. 43(c)(1).

\*\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

**160**

Bertram L. Potter, Potter & Cohen, Pasadena, Cal., for plaintiffs-appellants.

Joseph Stein, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, Cal., for defendant-appellee.

Before NORRIS, HALL and THOMPSON, Circuit Judges.

## ORDER

The memorandum disposition filed December 7, 1990, is redesignated as an opinion authored by Judge Hall.

## OPINION

CYNTHIA HOLCOMB HALL, Circuit Judge:

Abraham and Marion Rand ("the Rands") appeal the district court's grant of summary judgment in favor of Louis Sulli-

van, M.D., Secretary of Health and Human Services. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

### I

The Rands are the sole stockholders in Institutional Foods of America, a food brokerage business they operate out of their home. Prior to July 1979, Mr. Rand performed most of the duties associated with the operation of the business. In July 1979, upon reaching age 65, Mr. Rand retired because of ill health. His salary dropped to approximately $400 per month. The Rands claim that after Mr. Rand retired, his duties consisted of handling up to three business calls per day, opening the mail, calling in mail orders, and handling correspondence.

Mrs. Rand assumed greater responsibilities for the operation of the business upon her husband's retirement. She took telephone orders, invoiced accounts, and performed banking and accounting chores. Her salary increased substantially, ranging between $22,900 and $49,000 during the years 1979 to 1983.

In 1984, Mrs. Rand reached age 65 and filed an application for social security retirement benefits. She relinquished her "control" over the business to her husband, whose medical condition had improved. Mr. Rand turned 70 that same year, and thus was no longer subject to the social security annual earnings test.[1] After Mrs. Rand's retirement, Mr. Rand's income increased from $400 a month to over $5,000 a month.

The Social Security Administration ("SSA") advised Mrs. Rand, by way of a letter dated February 28, 1986, that it had opened an investigation to determine whether the Rands had properly allocated the income from their business for social security purposes. On June 3, 1986, Mrs. Rand was advised that the SSA was crediting her earnings for the years 1979 to 1984 to her husband. In reaching this decision,

---

**1.** The Social Security Act provides that an individual's retirement insurance benefits may be reduced upon the receipt of wages or self-employment income above a specified amount. 42 U.S.C.A. § 403(b) (West Supp.1990). This annual earnings test ceases to apply once the individual attains the age of 70. 42 U.S.C.A. § 403(f)(3) (West Supp.1990).

the SSA relied on statements from four of the Rands' customers, all of whom were unaware of any changes in the management of the Rands' business during the years 1979 to 1984.

The Rands appealed the SSA's decision. An administrative hearing was held, and on December 16, 1987, the administrative law judge issued a decision upholding the SSA's determination. The Appeals Council subsequently modified this decision, finding that the Rands had contributed services of equal value to their business between 1979 and 1984. The Appeals Council allocated the Rands' income accordingly, which made Mrs. Rand eligible for social security retirement benefits and resulted in a finding of a net overpayment of retirement benefits to Mr. Rand.

The Rands appealed to the district court, which entered summary judgment in favor of the Secretary. This appeal followed.

## II

The Rands challenge the Secretary's [2] findings on three grounds. They claim that the Secretary improperly failed to make explicit credibility determinations regarding their testimony, that the Secretary's findings were not supported by substantial evidence, and that the Secretary's income allocation was barred by the applicable statute of limitations. Each of these arguments is discussed below.

## A

The Rands first contend that the Secretary improperly refused to make credibility determinations regarding their testimony.[3] The Rands' argument relies heavily on *Lewin v. Schweiker*, 654 F.2d 631 (9th Cir. 1981), in which the court held that if the credibility of the claimant was a "critical factor in the Secretary's decision," there must be "an explicit finding whether the

Secretary believed or disbelieved the claimant...." 654 F.2d at 635.

■ Despite the Rands' argument, *Lewin* is not controlling in this case because the Rands' credibility was not a "critical factor in the Secretary's decision." The central issue here is whether Mr. Rand was underpaid (and Mrs. Rand correspondingly overpaid) for the services they each rendered to their business. The Secretary did not question the Rands' claims regarding the amount of time they each devoted to their business, or the context of each of their tasks. Rather, what the Secretary challenged was whether their allocation of income was reasonable in light of the tasks they claimed to have performed. Because this inquiry did not require the Secretary to make a credibility determination regarding the Rands' testimony, we find that the Secretary acted properly.

## B

The Rands also allege that the Secretary's findings were not supported by substantial evidence. Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

■ In this case, the Secretary relied on a range of evidence in reaching its decision. The Secretary considered statements from some of the Rands' customers, the Rands' testimony regarding their respective duties and obligations to their business, and the circumstances surrounding Mr. Rand's retirement, medical problems, and subsequent recovery. When viewed as a whole, as this court must do, it is clear that the Secretary's findings were supported by substantial evidence. *Green v. Heckler*,

---

**2.** Both an Administrative Law Judge and the Appeals Council issued opinions in this case. We refer to them collectively as "the Secretary" unless a particular opinion is cited.

**3.** It is interesting to note that although the Rands argue that the Secretary erred in failing to make any credibility assessment regarding their testimony, they later assert that the Secretary made an "improper exercise of credibility adjudication" regarding the same testimony.

803 F.2d 528, 530 (9th Cir.1986) ("This court must consider the record as a whole, weighing both the evidence that supports and detracts from the Secretary's conclusion.").

The Rands argue that the evidence is, at best, equivocal. They base this assertion on the fact that Adonis Katopodis' testimony before the Administrative Law Judge supported the Rands' claims, while his written statement did not. It is true that Mr. Katopodis' two statements are contradictory. The Appeals Council, however, explicitly rejected his oral testimony in favor of his earlier written statement, stating that "[t]he Appeals Council places greater probative value on the unmistakable statement of Adonis Katopodis dated October 24, 1985 written prior to the time that the effect of his words were known, than on the subsequent testimony of this individual at the hearing."

The Appeals Council's treatment of this contradictory testimony was within its authority. *Gallant v. Heckler,* 753 F.2d 1450, 1453 (9th Cir.1984) (in reaching its findings, the Secretary may draw inferences that logically flow from the evidence presented); *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982) (" 'Questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.' " (quoting *Waters v. Gardner,* 452 F.2d 855, 858 n. 7 (9th Cir.1971))).

Thus, contrary to the Rands' assertions, the Council's treatment of Mr. Katopodis' contradictory testimony does not warrant a finding that its conclusions were not supported by substantial evidence. Therefore, the Rands are not entitled to prevail on this point.

### C

The Rands further claim that the Secretary's allocation of their income prior to 1982 is barred by the statute of limitations, which allows the Secretary to correct its earnings records within three years, three months and fifteen days of the end of the applicable calendar year. 42 U.S.C.A. §§ 405(c)(1)(B), 405(c)(4)(A) (West 1983).

■ There are, however, several exceptions to this general rule. In particular, section 405(c)(5)(G) provides that after the expiration of the statute of limitations, the Secretary may alter its wage records "to correct errors made in the allocation, to individuals or periods, of wages or self-employment income entered in the records of the Secretary." 42 U.S.C.A. § 405(c)(5)(G) (West 1983). This section gives the Secretary the power to allocate the wages between the Rands even after the statute of limitations has expired.

The Rands also argue that the Secretary's own regulations prevent it from revising its records for the years 1979 through 1981. Section 404.822(e)(1) allows the Secretary to make corrections to its records in situations where an investigation is opened before the expiration of the statute of limitations, but completed after the statute of limitations has expired. 20 C.F.R. § 404.822(e)(1) (1987). In these cases, the correction may be made only if the investigation was carried out "as promptly as circumstances permitted." *Id.*

The Rands argue that the earliest date the investigation could have begun was May 1, 1984, the day Mrs. Rand applied for retirement benefits, and thus the exception to the statute of limitations set out in section 404.822(e)(1) did not apply. Further, the Rands claim that the investigation was not done "as promptly as circumstances permitted."

As the magistrate found, however, section 404.822(e)(1) covers only one of several situations in which the Secretary may revise income records after the expiration of the statute of limitations. The regulations state that corrections may be made after the statute of limitations has run if *any* of the circumstances listed in 20 C.F.R. §§ 404.822(b)–(e) apply.[4]

---

**4.** Briefly, 20 C.F.R. §§ 404.822(b)–(e) authorizes the Secretary to correct its earnings records in the following situations: when its records conflict with the wage earner's tax returns; when

the wage earner requests such a correction; when the earnings were mistakenly reported to the Railroad Retirement Board or vice versa; when an investigation has begun before the stat-

Among these circumstances is one similar to the situation here: under section 404.822(e)(4) the Secretary "may correct errors in SSA records resulting from earnings being entered for the wrong person or period." 20 C.F.R. § 404.822(e)(4) (1987).

Therefore, we hold that the Secretary's allocation of the Rands' income for each of the years was timely and authorized by statute and regulation.

### III

Finally, the Rands seek attorneys' fees pursuant to the Equal Access to Justice Act, which provides that "a court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States." 28 U.S.C.A. § 2412(d)(1)(A) (West Supp.1990). Since the Rands have not prevailed on this appeal, they are not entitled to recover their attorneys' fees.

### IV

The Secretary's findings are AFFIRMED in all respects. The Rands' request for attorneys' fees is denied.

ute of limitations has run; when an error is apparent on the face of the records; when fraud has been committed; when entries were made for the wrong person or time period; when an employer has mistakenly failed to report an employee's earnings; and to comply with the findings of a court or administrative agency.