# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2594

_____

|  |  |  |
|---|---|---|
| Amarjit Singh; Dripinder Singh; Manjit Kaur, | * * * | |
| Petitioners, | * | |
| v. | * * * | Petition of Review from the Board of Immigration Appeals. |
| Alberto Gonzales, Attorney General of the United States of America, | * * * | |
| Respondent. | * | |

_____

Submitted: January 12, 2007
Filed: July 19, 2007

_____

Before COLLOTON, BRIGHT, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Amarjit Singh, his wife (Manjit Kaur), and their son (Dripinder Singh) petition for review of an order of the Board of Immigration Appeals. The Board affirmed without opinion an immigration judge's denial of the petitioners' application for asylum, withholding of removal, and protection under the Convention Against Torture. We deny the petition.

Petitioners are natives and citizens of India who practice the Sikh faith. They entered the United States in October 1996 on visitor visas. In February 1997, Singh applied for asylum and withholding of removal on behalf of himself and his family. Singh contends that Indian authorities have persecuted him for his political beliefs in the past and will continue to do so if he is returned to India. An immigration judge conducted a hearing on the claims for relief, but concluded that Singh and his family did not qualify for asylum, withholding of removal, or relief under the CAT. The BIA affirmed without opinion.

At a hearing before the immigration judge, Singh testified that beginning in 1984, he began to support the movement for Sikh independence as a member of the All-India Sikh Students Federation (AISSF). The separatist movement – called the "Khalistan" movement by its supporters – sought to establish a Sikh state in the Punjab region. Initially, Singh limited his participation in the movement to helping other Sikhs obtain food, shelter, and employment. By 1991, however, Singh's activities became political in nature, and he participated in organized rallies designed to influence the central government.

Singh testified that on October 28, 1994, he attended an AISSF meeting where participants organized a rally to voice grievances with the government. Two days later, Singh said, police officials took him to the local police station, where they beat him and demanded information about the meeting. According to Singh, after four days of detention and physical abuse, his family bribed the police to release Singh from custody. Singh testified that another round of abuse occurred in August 1995. Sikh separatists had planned protests to coincide with India's independence day, and Singh testified that police officials detained him for several days and beat him severely for his role in planning the protests. He explained that his parents again secured his release with a bribe.

Kaur, Singh's wife, also testified at the hearing. She stated that police returned to the family home in June 1996 after the arrest of a priest at the local Sikh temple. By this time, she said, Singh had gone into hiding, anticipating the arrival of the police, but Kaur stayed behind with her father-in-law and son. When the police arrived at the home, they took Kaur and Singh's father to the station. Kaur testified that the authorities beat and raped her at the station, in the presence of her father-in-law, because of her husband's participation in the Khalistan movement. She said that she never told Singh of the rape, because she was ashamed. Kaur testified that her father-in-law secured her release, but that police returned to the home about a month later to search for pro-Khalistan materials. Kaur's neighbors intervened to prevent her from being seized, and Kaur explained that after the police left, she went into hiding with her son.

Singh and Kaur later decided to emigrate with their son to the United States. When the government commenced removal proceedings, Singh and Kaur conceded removability, but renewed their requests for asylum. They initially filed their claim in San Francisco, but after the San Francisco IJ discovered that they had moved to Missouri – or had lived there all along – he transferred the case to the proper Immigration Court. Eventually, an IJ in St. Louis heard the case and concluded that Singh and Kaur were not eligible for asylum. Citing inconsistencies in the evidence and a lack of corroboration, the IJ concluded that Singh and Kaur were not credible, and that they had failed to satisfy their burden of proof and persuasion for their claims. The Board affirmed the IJ's decision without opinion, so we treat the IJ's opinion as that of the Board. *Prokopenko v. Ashcroft*, 372 F.3d 941, 944 (8th Cir. 2004).

II.

The Attorney General may grant asylum to an alien who is unwilling to return to his home country because of a persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or

political opinion. *See* 8 U.S.C. § 1158(b)(1); *id.* § 1101(a)(42)(A). "To establish a well-founded fear of future persecution, the alien must show that he subjectively fears persecution, and that there is credible, direct, and specific evidence that a reasonable person in the alien's position would fear persecution if returned to the alien's country." *Mamana v. Gonzales*, 436 F.3d 966, 968 (8th Cir. 2006). We review the IJ's decision for substantial evidence, *Menendez-Donis v. Ashcroft*, 360 F.3d 915, 918 (8th Cir. 2004), and will not disturb her findings of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). The language of § 1252(b)(4)(B) replaced a "substantial evidence" standard in the former statute, but "we have declined to treat the 1996 amendment as working any material change to the standard of review." *Menendez-Donis*, 360 F.3d at 918. This is because "Congress seems to have drawn the language for the new statute directly from *INS v. Elias-Zacarias*, 502 U.S. 478, 481 & n.1, 483-84 (1992), a decision construing the former statute," including its "substantial evidence" standard. *Menendez-Donis*, 360 F.3d at 918.

Singh and Kaur challenge the IJ's adverse credibility determination, arguing that the IJ did not adequately justify her finding. A credibility determination is a finding of fact, and § 1252(b)(4)(B) provides that it should be accepted "unless any reasonable adjudicator would be compelled to conclude to the contrary." *See Mamana v. Gonzales*, 436 F.3d 966, 968 (8th Cir. 2006); *Turay v. Ashcroft*, 405 F.3d 663, 668 (8th Cir. 2005); *accord Pilica v. Ashcroft*, 388 F.3d 941, 952 (6th Cir. 2004).[1] Petitioners contend, however, that we have applied a more demanding standard of review to credibility findings, and that the IJ's adverse finding must be set aside if the IJ did not provide a "specific, cogent reason" for the determination. *See Ghasemimehr v. INS*, 7 F.3d 1389, 1391 (8th Cir. 1993) (per curiam). While the terminology used

---

[1]The Real ID Act of 2005, Pub. L. 109-13, includes a specific provision governing credibility determinations, 8 U.S.C. § 1158(b)(1)(B)(iii), but this provision applies only to applications made after May 11, 2005. Pub. L. 109-13, § 101(h)(2). Singh made his application before this date, so the new statute does not apply.

in some of our cases is not identical to the statute, we believe that the standards can, indeed must, be harmonized, for we do not have authority to adopt a standard of review that varies from the governing statute. The origins of our terminology indicate that there is no real inconsistency, and our cases can be reconciled comfortably with the statute.

The reference to a "specific, cogent reason" entered our cases in *Ghasemimehr*, where we stated that we review an IJ's credibility findings for "substantial evidence," and elaborated that "[w]e defer to an IJ's finding that an alien's testimony is not credible as long as the finding is supported by a specific, cogent reason for debelief." 7 F.3d at 1391. We drew the "specific, cogent reason" language from a Ninth Circuit decision, *Berroteran-Melendez v. INS*, 955 F.2d 1251, 1256 (9th Cir. 1992), which followed two other immigration decisions from that court. *See Turcios v. INS*, 821 F.2d 1396, 1399 (9th Cir. 1987); *Damaize-Job v. INS*, 787 F.2d 1332, 1338 (9th Cir. 1986). Those cases, in turn, originally borrowed the phrase from a Social Security case, *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). The *Lewin* case quoted from an opinion of the district court in Western Missouri, *Stuart v. Califano*, 443 F. Supp. 842 (W.D. Mo. 1978), which said that rejection of testimony as incredible should be "accompanied by a specific finding to that effect, supported by a specific, cogent reason for the disbelief." *Id*. at 848. To bring the matter full circle, the district court in *Stuart* cited (but did not quote) an opinion of our court, *Lund v. Weinberger*, 520 F.2d 782, 785-86 (8th Cir. 1975), to support the proposition. The court in *Lund* did not expressly require an agency to provide a "specific, cogent reason," but said simply that "[w]hile credibility determinations are for the Secretary, there should be found in the record some basis for disbelieving such critical testimony." *Id*.

In perhaps the most fulsome explanation of this line of cases, the *Lewin* decision grounded its call for specific, cogent reasons in the responsibility of the administrative adjudicator to provide an adequate record for judicial review. The court emphasized that the adjudicator – in that case, an examiner from the Social

Security Administration – should include "a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision." 654 F.2d at 635 (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974)). This is necessary, the court explained, so that the reviewing court "may properly exercise its responsibility" to determine whether the agency's decision was supported by substantial evidence. *Id*. This rationale is consistent with our decision in *Lund*, purportedly the font of the "specific, cogent reason" phrase, which set aside the decision of an agency that failed to identify a basis in the record for disbelieving a witness's critical testimony. 520 F.2d at 785-86. *See also Zhang v. INS*, 386 F.3d 66, 74 (2d Cir. 2004) (explaining that review of IJ's credibility findings is "exceedingly narrow," and that search for "specific, cogent" reasons is meant to "ensure that credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice").

In view of this background, we believe the requirement in our cases that an IJ give "specific" reasons for a credibility finding is best understood as an application of the familiar principle of administrative law that an agency must explain its decisions. When a court reviews the decision of an administrative agency, "the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943). Like any other administrative agency, the BIA must describe its reasoning "with such clarity as to be understandable." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *see INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam); *Shkabari v. Gonzales*, 427 F.3d 324, 327-28 (6th Cir. 2005). An immigration judge, therefore, must give reasons that are "specific" enough that a reviewing court can appreciate the reasoning behind the decision and perform the requisite judicial review. But there is no additional requirement of specificity.

The statement in our cases that an IJ must give "cogent" reasons for a credibility finding must be understood in light of § 1252(b)(4)(B). "Cogent" means

"convincing," but convincing is a relative term, as evidenced by various standards of proof under which a finder of fact must be convinced in different contexts. We said in *Ghasemimehr* that we review the credibility findings of an IJ and the BIA for "substantial evidence," 7 F.3d at 1391, and § 1252(b)(4)(B) now embodies the substantial evidence standard in immigration cases, as articulated by the Supreme Court in *Elias-Zacarias*, 502 U.S. at 481 & n.1, and subsequently codified by Congress. *See Menendez-Donis*, 360 F.3d at 918. The applicable statute thus tells us how "cogent" the IJ's reasons must be to withstand judicial review. They must be convincing enough that a reasonable adjudicator would not be compelled to reach the contrary conclusion. There is no requirement that the IJ's reasons reach a level of cogency that exceeds the standard set by Congress in § 1252(b)(4)(B).

Applying these standards, we conclude that the IJ offered an adequate explanation for her findings that Singh and Kaur were not credible, and that the record does not compel a contrary finding. Although a few of the many bases listed by the IJ for doubting the petitioners' credibility may be questionable, there were sufficient grounds to support the IJ's finding. *See Cao v. Gonzales*, 442 F.3d 657, 661 (8th Cir. 2006); *Tarrawally v. Ashcroft*, 338 F.3d 180, 187 (3d Cir. 2003).

The IJ cited several inconsistencies in the record that reasonably justified her finding that the petitioners' claims of persecution were not credible. Singh and Kaur provided implausible testimony about their living arrangements in the United States. Singh claimed that the family lived with two persons in California, with whom the family had no prior relationship, and without paying rent for two years. At a hearing in San Francisco, Singh could neither describe the location of, nor identify highways in, Orland, California, where he claimed to have lived for two years. Kaur could not provide the purported family address. Even more troubling, birth records revealed that Singh's second son was born in Missouri during the period when Singh says the family lived in California. The IJ reasonably disbelieved Singh's explanation for why his wife had traveled to Missouri for the birth – namely, that the couple did not know

the readily ascertainable fact that charity care was available in California. Singh's agitated demeanor when questioned about the family's time in California was another legitimate reason for the IJ to doubt his veracity. The IJ reasonably concluded that Singh and Kaur had asserted residence in California as part of an effort to engage in forum-shopping.

With respect to the testimony concerning events in India, the IJ reasonably found it significant that Kaur's testimony contradicted statements in Singh's asylum petition about when and why Singh went into hiding. The IJ noted that Singh and Kaur testified that Singh went into hiding *before* Kaur's arrest, but the asylum petition indicated that Singh went into hiding *after* his wife's arrest. Singh's petition also suggested that he went into hiding because of the police harassment, but Singh and Kaur testified at the hearing that he went into hiding in reaction to the arrest of a Sikh cleric at the temple. Whether Singh went into hiding as a result of abuse by government officials is central to petitioners' claim for asylum, and discrepancies on this point were a legitimate reason for the IJ to question the credibility of petitioners' assertion about past persecution.

Another discrepancy that reasonably supported the IJ's credibility finding related to the search of Singh's home by police in October 1995. Singh stated in his asylum petition that police seized literature of Khalistan and pamphlets relating to a protest rally, but he testified at the hearing that police found only a small sheet of paper and no pamphlets. We also think the IJ was within the bounds of reasonable adjudication in discounting Kaur's testimony that she was raped at the police station. The police conduct was heinous if the testimony is believed, and it is understandable that the female petitioner may have been reluctant to discuss such a degrading experience if it occurred. In light of the overall credibility problems with the testimony of Singh and Kaur, however, we cannot say that the IJ was compelled to accept Kaur's statements about the incident at the police station without some corroboration. *See Esaka v. Ashcroft*, 397 F.3d 1105, 1110 (8th Cir. 2005) (holding

that an immigration judge may "base a credibility determination on the lack of corroborating evidence if the judge also encounters inconsistencies in testimony, contradictory evidence, or inherently improbable testimony").

In sum, because the record does not compel a finding that Singh and Kaur presented credible testimony, we cannot disturb the IJ's determination on that point. Without a finding of credible testimony to demonstrate past persecution or a well-founded fear of future persecution, the asylum claim must fail. The denial of petitioners' asylum claim dictates the same outcome on their claims for withholding of removal and relief under the Convention Against Torture, which are based on the same underlying factual allegations. *See Samedov v. Gonzales*, 422 F.3d 704, 708 (8th Cir. 2005).[2]

---

[2]Singh and Kaur also challenge the IJ's decision to exclude as untimely an updated asylum application, affidavits from the adult petitioners, and documents with country information, all of which were submitted only nine days before the scheduled hearing. At a preliminary hearing, the IJ clearly told Singh's counsel that all documents were due "one month in advance of the [merits] hearing." (J.A. at 136). Consistent with that direction, the immigration court then entered an order that all exhibits must be submitted by February 10, 2004, and sent a copy of this order to Singh's counsel. (J.A. at 548-50). Because the petitioners did not submit their materials by that date, they waived the opportunity to submit these documents for the IJ's consideration. 8 C.F.R. § 1003.31(c) ("If an application or document is not filed within the time set by the Immigration Judge, the opportunity to file that application or document shall be deemed waived."). Nor do we see any prejudice to petitioners, given that petitioners were able to testify at the hearing to any information included in the updated asylum application and affidavits, and the proffered country information was immaterial to the credibility concerns on which the IJ based her decision. Accordingly, the IJ did not abuse her discretion by excluding the evidence. *See Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004).

\* \* \*

For the foregoing reasons, the petition for review is denied.

_____