**Rhonda WATSON, Individually and as next friend of Wilhemina Watson, Plaintiffs,**

v.

**Joseph A. CALIFANO, Secretary of the United States Department of Health, Education and Welfare, Defendant.**

**No. 78 Civ. 107 (RWS).**

United States District Court, S. D. New York.

Sept. 28, 1979.

Jane Greengold Stevens, Legal Services for the Elderly Poor, New York City, for plaintiffs.

Robert B. Fiske, Jr., U. S. Atty., S. D. New York, New York City, for defendant; Michael H. Dolinger, Asst. U. S. Atty., New York City, of counsel.

## OPINION

SWEET, District Judge.

This is an action in which the plaintiffs, Rhonda and Wilhemina Watson, seek to recover certain disability benefits paid for their benefit by Joseph Califano, The Secretary of Health Education and Welfare ("the Secretary"), to their father, James Watson, as their representative payee. Plaintiffs have moved, pursuant to Rule 56, Fed.R. Civ.P., for summary judgment. Defendant has cross-moved, pursuant to Rule 12(c), Fed.R.Civ.P., for judgment on the pleadings.

### I

Plaintiffs Rhonda and Wilhemina Watson are the minor children of Ella Watson and James Watson. On July 7, 1971, James Watson filed an application for Social Security disability insurance benefits. He was found eligible as of June, 1971. Three weeks later, on July 28, 1971, James Watson filed an application for benefits for his children John, Donald, Rhonda, and Wilhemina, and a granddaughter, Wendy Cruse. He also applied to be appointed the representative payee for the children. On his application, James Watson stated that his wife had left home, that he was not in custody of his children, but that he was visiting them daily.

Neither Wilhemina Watson, nor Rhonda Watson, the plaintiffs, nor their mother Ella Watson knew that James Watson had filed an application for himself or his children. They also did not know of their potential or actual eligibility for Social Security benefits until April, 1976.

Plaintiffs and their siblings were found eligible for Social Security benefits on their father's account as of June, 1971. James Watson was appointed representative payee to receive benefits on their behalf, and received benefits as the representative payee from October, 1971 until April, 1976. During that period of time, Mr. Watson did not have custody of the plaintiffs and they never received any of the benefits paid out in their behalf on the account of James Watson.

During the entire period from October, 1971 to April, 1976, the defendant Secretary never requested an accounting from James Watson concerning his use of the benefits paid to him as representative payee for his children. In fact, the Secretary never investigated in any way Watson's use of the funds paid to him as representative payee until after Ella Watson's application in April, 1976.

This result obtained because in 1971, the Secretary suspended the Claims Manual procedures for requiring annual accountings of representative payees in an effort to reduce work load. The suspension of the accounting system was effected through temporary Claims Manual transmittals and was never published in the Federal Register or the Social Security Rulings. The suspension of accounting lasted, in some form, throughout the period relevant to this law suit, that is October, 1971 to April, 1976. During that time the accounting system was totally suspended and all supervision of representative payees (except certain institutions) was cut off.

## II

■ Plaintiffs assert that the jurisdiction of this court is based on 42 U.S.C. § 405(g). Although this section confers jurisdiction, it does not waive sovereign immunity or confer a substantive right. *DeLao v. Califano,*

560 F.2d 1384, 1390 (9th Cir. 1977); *Johnson v. Mathews,* 539 F.2d 1111, 1123 (8th Cir. 1976). To recover the monies allegedly improperly paid to James Watson, there must be a statute, which when read together with § 405(g), creates a "substantive right to recover money damages from the United States." *See United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).[1] Alternatively, plaintiffs must show that the Secretary's conduct creates an exception to the sovereign immunity doctrine because it was (1) beyond his statutory powers or (2) performed pursuant to an unconstitutional statute or in an unconstitutional manner. *Dugan v. Rank,* 372 U.S. 609, 621–22, 83 S.Ct. 999, 1006–07, 10 L.Ed.2d 15 (1963).

■ Plaintiffs rely on 42 U.S.C. § 402(j)(1) to recover the benefits due during the twelve month period prior to their mother's application in April, 1976. That section provides that:

. . . an individual who would have been entitled to a benefit . . . had he filed application therefor prior to the end of such month shall be entitled to such benefit for such month if he files application therefor prior to the end of the twelfth month immediately succeeding such month. Any benefit under this subchapter for a month prior to the month in which the application is filed shall be reduced, to any extent that may be necessary, so that it will not render erroneous any benefit which, before the filing of such application, the Secretary has certified for payment for such prior month.

The purpose of the provision for reducing benefits is "[to] eliminate unnecessary work in adjusting payments which were *correct* when made . . . ." 1946 U.S.Code Cong.Serv. pp. 1510, 1542 (emphasis added). Therefore, if it can be shown that the pay-

---

1. Plaintiffs argue that *Testan* is not controlling because it did not deal with statutes that made explicit provisions for the payment of money owing. While certain sections of the Social Security Act do provide for the payment of money, this court feels constrained to grant monetary relief only in the manner provided by

these sections. *See United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 770, 85 L.Ed. 1058 (1941) (the United States, as sovereign, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit.")

ments during that period were incorrect when made, plaintiffs may recover under this section.[2]

Plaintiffs assert a separate statutory claim based upon the prior application made on their behalf by James Watson in an attempt to recover benefits paid since 1971. They rely on 42 U.S.C. § 404(a)(2) which provides:

(a) Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made under regulations prescribed by the Secretary, as follows:

\* \* · \* \* \*. \*

(2) With respect to payment to a person of less than the correct amount, the Secretary shall make payment of the balance of the amount due such underpaid person

. . . .

An "underpayment" usually evolves from unpaid accrued benefits or unnegotiated checks. See 20 C.F.R. § 404.501; Soc.Sec. Handbook (DHEW) No. (SSA) 74–10135, 1974 § 1900.

Here, full benefits were granted to the plaintiffs and full payment was made to the representative payee. No canon of judicial interpretation has been found to convert an allegedly improper payment into a statutory "underpayment."

Indeed, in *Burrow v. Finch*, 431 F.2d 486 (8th Cir. 1970), the court noted:

Equitable principles cannot increase benefits not otherwise provided within the Act itself. Congressional intent is clear that no more than the maximum benefit authorized can be paid out. *Id.* at 491.

In *Burrow*, the court found that the maximum family allowance available to the beneficiaries under 42 U.S.C. § 415 constitutes the limits against which all claimants must file. *Id.* Consequently, the plaintiffs were not allowed to recover under § 404(a) for prior underpayments unless that amount

could be recovered from other family members who had been "overpaid" by the Secretary under 42 U.S.C. § 404(b).

The legislative history of § 403(a), which discusses the maintenance of maximum benefit limits, reveals that Congress did not consider whether recovery by beneficiaries should be limited when payments are incorrectly made to improper payees. See S.Rep.No.734, 79th Cong., 1st Sess. 48–49 (1939); H.R.Rep.No.1461, 79th Cong., 1st Sess. 8 (1939). However, even assuming that Congress's failure to consider this problem should be viewed in light of the fact that the Social Security Act is a remedial statute to be construed liberally in favor of those seeking benefits, *Damon v. Secretary of HEW*, 557 F.2d 31, 33 (2d Cir. 1977), in order to recover the plaintiffs must still show that the payments to James Watson were incorrect or invalid when made.

A. Appointment of James Watson

Plaintiffs assert that the initial appointment of James Watson was improper and in violation of 42 U.S.C. § 405(j). Culpability is premised on two theories: the alleged failure to notify the plaintiffs of Watson's application and the failure by the Secretary to investigate the application.

Plaintiffs allege that the failure to give them notice violated the constitutional mandate of due process, the provisions of the Social Security Claims Manual (the "Claims Manual") and the Social Security Regulations. The requirement of notice is claimed not with respect to plaintiffs' entitlement to the benefits, *see e. g. Elliott v. Weinberger*, 371 F.Supp. 960 (D.Hawaii 1974), *aff'd*, 564 F.2d 1219 (9th Cir. 1977), *modified sub nom. Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), but rather to the propriety of appointing their father as the representative payee. This court recognizes that there may be a need for notice to beneficiaries in certain circumstances, *see, e. g., Tidwell v. Weinberger*, (CCH) Unemployment Ins. Reporter ¶ 14,-

---

**2.** Although it may be argued that the Secretary need not pay out more than the maximum family limit provided in 42 U.S.C. §§ 403(a),

415, the court rejects that approach for the reasons discussed *infra*.

756 (N.D.Ill.1976); however, the failure in this instance to notify the infant plaintiffs or their absent mother does not constitute a denial of constitutional rights.

 In this instance, the father's application, based upon his own disability and co-signed by the plaintiffs' older sister, stated that his wife had left home, that he did not know where she was and that he visited the children daily. Furthermore, with the exception of the twelve month period for which retroactive benefits may be recoverable, the lack of notice did not deprive the plaintiffs of any property rights to which they were otherwise entitled. An individual who qualifies for benefits is not entitled to such automatically; applications for benefits is a prerequisite to entitlement. Therefore, absent their father's application, plaintiffs would have no claim to the benefits paid for the period between his application and twelve months prior to their own.

 Plaintiffs next assert that the failure to give them notice violated an unidentified provision of the Claims Manual. Although plaintiffs have cited authority for the proposition that an agency is generally required to abide by its own regulations, *see, e. g., Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), these are not controlling with respect to the alleged failure to follow the provisions of the Claims Manual. The Manual constitutes solely internal agency guidelines which do not have the status of either law or regulation. *See McCauliffe v. HEW,* (CCH) Unemployment

---

**3.** Plaintiffs' assertion that the lack of publication of the suspension of the Claims Manual renders the suspension ineffective need not be decided in view of this court's determination that the Secretary was not obligated to follow its provisions. This court does note, however, that as to the period prior to April, 1975, plaintiffs have no valid claim arising from the failure to give notice of the suspension of the rules. Absent knowledge of Mr. Watson's application for benefits on their behalf, which plaintiffs concede, plaintiffs were not adversely affected by the lack of publication. *See generally Hogg v. United States,* 428 F.2d 274, 280 (6th Cir. 1970); *United States v. DeVaughn,* 414 F.Supp. 774 (D.Md.1976), *aff'd,* 556 F.2d 575 (7th Cir.),

Ins.Rep. ¶ 15,116 (D.Conn.1977); *cf. Morton v. Ruiz,* 415 U.S. at 235, 94 S.Ct. at 1074 (internal manual, not published in the Federal Register, does not have the force of law); *Clemente v. United States,* 567 F.2d 1140, 1143–44 (1st Cir. 1977), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 288 (no legal duty created by an order which was gratuitously issued and not pursuant to any statutory mandate). Further, the Manual was admittedly suspended during the period relevant to this action.[3]

Watson was appointed pursuant to 42 U.S.C. § 405(j), which provides:

> When it appears to the Secretary that the interest of an applicant entitled to a payment would be served thereby, certification of payment may be made, regardless of the legal competency or incompetency of the individual entitled thereto, either for direct payment to such applicant, or for his use and benefit to a relative or some other person.

The regulation set forth in 20 C.F.R. § 404.1602, promulgated pursuant to the authority granted the Secretary by section 405(a), provides in pertinent part:

> Before any amount shall be certified for payment to any relative or other person as representative payee for and on behalf of a beneficiary, such relative or other person *shall submit to the Administration such evidence as it may require* of his relationship to, or his responsibility for the care of, the beneficiary on whose behalf payment is to be made, or of his authority to receive such payment. (Emphasis added).

---

*cert. denied,* 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312 (1977). Although plaintiffs may be correct in asserting that had the Secretary followed the suspended procedures, the monies would not have been paid to James Watson, the failure to publish the suspension, in no way affected them. Absent knowledge of Watson's application, even if they had actual knowledge of the suspension, there would have been no occasion for any action on their part. Plaintiffs' contention that if there had been publication others may have commented and/or persuaded the Secretary not to suspend the operation of the provisions of the Manual at issue is too remote a possibility upon which to base a claim of being adversely affected.

The Claims Manual sets out a preference list of representative payees as follows:

(a) Natural or adoptive parent with custody, or legal guardian.

(b) Natural or adoptive parent not having custody but contributing and demonstrating strong concern.

(c) Natural or adoptive parent not having custody, not contributing, but demonstrating strong concern for the child's well-being.

■ "The selection of a representative payee is an exercise of discretionary authority reserved to the Secretary of HEW." (CCH) Unemployment Ins.Rep. ¶ 12,625, *citing McCauliffe v. Weinberger*, (CCH) Unemployment Rep. ¶ 17,393 (D.Conn.1973). According to James Watson's application, verified by plaintiffs' older sister, he satisfied both the second and third categories of preferred representative payees. The regulations simply require that the potential payee submit such evidence to the Administration as it may require; the Secretary has no duty to make an independent investigation or verification of such information. Indeed, such would appear to this court to be an undue and unreasonable burden when a natural parent is involved absent a specific statutory or regulatory mandate to do so. The cost of such investigations may indeed be prohibitive and a threat to the continued existence of the benefit program. Watson's appointment violated no provision of the Claims Manual, statute or regulation.

### B. Supervision of James Watson

Plaintiffs next assert that they are entitled to recover benefits because the Secretary abused his discretion by failing to supervise James Watson's use of the funds paid to him as representative payee.[4] They rely on a statutory provision which allows certification "when it appears to the Secretary" that the interests of the applicant would be served thereby but which makes no reference to any continuing supervision of the representative payee. 42 U.S.C. § 405(j). Section 405(a) gives the Secretary "full power and authority" to make rules and regulations consistent with that subchapter which are necessary or appropriate to carry it out.[5] The regulations promulgated under that provision provided that the Social Security Administration *may* require certain evidence regarding the continued existence of the relationship or responsibility of the representative payee,[6] or a written report accounting for the payments certified to him.[7]

■ However, the Administrative Procedure Act (APA) exempts from judicial review agency action that is committed to agency discretion by law.[8] The legislative history of the APA indicates that this exemption applies in those rare instances where "statutes are drawn in such broad

---

**4.** Plaintiffs' assertion that the Secretary did not follow the provisions of the Claims Manual is unavailable as a basis for relief for the reasons discussed *supra*.

**5.** 42 U.S.C. § 405(a) provides:

The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

**6.** 20 C.F.R. § 404.1602 provides in pertinent part:

The Administration may, at any time [after certification], require evidence of the continued existence of [the] relationship, responsibility or authority.

**7.** 20 C.F.R. § 404.1609 provides in pertinent part:

A relative or other person to whom payments are certified as representative payee on behalf of a beneficiary shall submit a written report in such form and at such times as the Administration may require, accounting for the payments certified to him on behalf of the beneficiary . . . .

**8.** The Judicial Review Chapter of the Administrative Procedure Act, 5 U.S.C. § 701 provides:

(a) this chapter applies, according to the provisions thereof, except to the extent that

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed. 136, 150 (1971), *quoting* S.Rep.No. 752, 79th Cong., 1st Sess. 26 (1945). *Accord Greater New York Hospital Ass'n v. Mathews*, 536 F.2d 494 (2d Cir. 1976).

 While the statutory provisions in the case at bar do not reflect a clear legislative intent to restrict access to judicial review, this does not affect the finding of unreviewability since such a showing is not required by section 701(a)(2). *See Greater New York Hospital Ass'n v. Mathews, supra*, at 499. Rather, there need simply be a showing that these provisions which commit any continuing supervision of representative payees to agency discretion are so broad that there is no law to apply. *See Maloney v. Sheehan*, 453 F.Supp. 1131, 1140 (D.Conn.1978) (agency action unreviewable where Secretary of Labor had power to promulgate necessary regulations and no statutory law or apparent Congressional policy on the subject). Because section 405(j) does not require any ongoing supervision of representative payees, and because section 405(a) gives the Secretary full power to promulgate any regulations which are necessary or appropriate to carry out that subchapter, "a court has quite literally no indicia by which it may evaluate that exercise [of discretion] and hence no power of review under § 701(a)(2)." *Greater New York Hospital Ass'n v. Mathews, supra*, at 498.

If the Secretary's actions were subject to review, the failure over a five year period to ensure that the benefits would be used for the beneficiaries would be found inexcusable. The language of the regulations and the suspended portions of the Social Security Claims Manual indicates that the Social Security Administration was keenly aware of the need to supervise representative payees in order to protect beneficiaries.[9] In addition, the requirement of some type of annual accounting would not have been an undue burden on the Administration, but would have been borne by the representative payee required to prepare the submission. Even if the Administration lacked the resources to review the submissions, or to verify them every third year as provided by the Manual, the mere threat of review and potential federal prosecution may have been enough to induce Mr. Watson to use the money for the benefit of his children.

### III

 The situation here is a very unfortunate one, but one for which there is no remedy for the plaintiffs. Absent a broader jurisdictional grant and a more stringent Congressional mandate, the court is unable to impose upon the Secretary duties and responsibilities beyond those required in the statute. Since the improper payments are not "underpayments" and there has been no showing that the payments to James Watson were incorrect or invalid, or that the Secretary exceeded his statutory authority or acted in an unconstitutional manner, judgment must be entered for the defendant.[10]

The defendant is hereby directed to submit an order in accordance with this opinion, on notice, within two weeks from the date hereof.

IT IS SO ORDERED.

---

9. Section 3202 of the suspended Claims Manual did not even exempt all natural parents from the accounting requirement.

10. Plaintiffs' request to reopen the decision to make James Watson the representative payee pursuant to 20 C.F.R. § 404.957(8) is also denied. That regulation provides that a determination of the Administration may be reopened for the purpose of correcting error on the face of the evidence on which such determination was based. Such an error exists where, on the basis of all the evidence in the file *at the time such determination or decision is made* it is *clear* that the determination or decision was incorrect. *See Ortego v. Weinberger*, 516 F.2d 1005, 1017 (5th Cir. 1975); *Lauritzen v. Weinberger*, 514 F.2d 561, 563 (8th Cir. 1975). For reasons already discussed, it cannot be said that the 1971 determination clearly was incorrectly based on the information available at that time.