Wallace J. KRAUSS, Sr., Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

Nos. 80 C 2638, 83 C 9237.

United States District Court, E.D. New York.

May 29, 1990.

Calvin C. Saunders, New York City, for plaintiff.

Andrew J. Maloney, U.S. Atty., Brooklyn (Bruce Nims, Asst. U.S. Atty., of counsel), for defendant.

NICKERSON, District Judge:

This matter concerns the conduct of plaintiff's attorney, Calvin C. Saunders, in representing plaintiff in 80 CV 2638, an appeal from a denial of disability insurance benefits (the "disability" claim), and in 83 CV 0237, an action seeking compensatory and punitive damages against defendant for alleged delay and mishandling of the earlier case (the "damages" claim).

Saunders was appointed from the *pro bono* panel on October 25, 1985, to represent plaintiff, Wallace Krauss, in his two earlier commenced actions. The court consolidated these actions on defendant's motion on March 23, 1984. The procedural history of these actions both before and after Saunders' appointment is set forth in the court's memorandum and order of August 18, 1989, familiarity with which is assumed.

On February 20, 1987, Assistant United States Attorney Deborah Zwany filed a memorandum of law in support of defendant's motion to dismiss the damages claim on the grounds of sovereign immunity. That day she informed the court and Saunders at a status conference that her office was asking the Department of Justice for permission to decline to defend the denial of Krauss' disability claim. The motion was argued on March 27, 1987 with Saunders present. The court reserved decision.

On May 8, 1987 the Assistant United States Attorney sent Saunders a proposed stipulation, dated May 8, 1987, providing that the disability claim be remanded to the defendant "solely for the purpose of calculation and payment of benefits." Saunders, on behalf of Krauss, rejected the stipulation. On May 27, 1987, Zwany sent Saunders a second set of proposed stipulations. The first provided for remand of the disability claim "solely for the purpose of calculation and payment of benefits from December 31, 1975, the date of onset al-

leged by plaintiff." The second provided for dismissal of plaintiff's damage claim with prejudice. Krauss again refused to agree to these. Saunders did not respond to this offer, or to a second mailing of these proposed stipulations on June 17, 1987.

Assistant United States Attorney Bruce Nims took over the case from Zwany. In April 1988 he explained to Saunders that Krauss' latest conditions for signing a stipulation to remand the disability claim, namely, that the defendant not review Krauss' eligibility for disability benefits for at least three years, would contravene 42 U.S.C. § 421(h). Nims again enclosed a proposed stipulation to remand the disability claim for calculation and payment of benefits from December 31, 1975.

Saunders prepared a counter-stipulation dated April 25, 1988, with new conditions, including that defendant reimburse plaintiff for various costs, provide him with various records, and provide a physical examination before denying or reducing benefits in the future. In a letter dated July 29, 1988, Nims informed Saunders the defendant would not agree to any terms other than those it had proposed, and again sent a proposed stipulation for remand of the disability claim.

On November 1, 1988, Saunders sent another counter-stipulation with further conditions, including that the defendant pay various costs Krauss had incurred, and attorneys fees on the damage claim for Krauss' self-representation, although the counter-stipulation also provided for dismissal of the damage claim with prejudice. Apparently aware these conditions would be unacceptable, Saunders wrote in an accompanying letter that further negotiation was useless, and that his client requested the "matter be brought before the court ... per Rule 11, to be heard as expediently as possible."

Unable to discontinue the actions with plaintiff's consent, defendant moved to remand the disability claim for calculation of benefits, and moved to dismiss the damage claim on December 19, 1988. This court

granted both motions, the remand on January 20, 1989 and the dismissal with prejudice on March 1, 1989.

On April 11, 1989, shortly after Krauss was notified of the amounts defendant would pay him, Saunders sent him a contingency fee arrangement to review and sign. The arrangement was in the form of a letter from Krauss to Saunders, which read in relevant part:

At the time your firm agreed to represent me before the Eastern District Court of New York, I agreed to a legal fee of 25% of all retroactive benefits received by me, if successful. Subsequent to this agreement you informed me that the [sic] in the event the Court determined that the reasonable value of your legal services was determined by the Court to be less than 25% of the retroactive benefits, I would be entitled to any difference between the amount you were awarded, and the 25% that Social Security would withhold from my award. [....]

As a result of the expertise of the law firm of Calvin C. Saunders., an acceptable decision was rendered, and I will be receiving monthly Social Security benefits as well as the retroactive monies due.

I am thoroughly satisfied with the way in which the Social Security matter was handled and I approve and consent to the 25% of any retroactive benefits withheld for legal fees (...).

This was accompanied by a cover letter that said, "if [the fee arrangement] contains anything that is inaccurate please feel free to correct it" and "I will submit [the arrangement] to Judge Nickerson and allow him to determine the appropriate amount of attorney's fees."

Saunders subsequently applied to this court for fees equal to 25% of the considerable benefits due plaintiff, or $24,466. In his papers to support this application, Saunders included timesheets—all captioned with the docket number of the damages action—stating he spent a total of 183½ hours of his time (incorrectly totaled on those documents as 182 hours) on Krauss'

affairs, 74½ hours of it prior to receiving the defendant's stipulation on May 27, 1987.

Among the matters in these records are eight hours spent in January 1989 preparing a brief on the onset date of disability, even though the government had conceded plaintiff's alleged onset date nearly two years earlier. This brief was delivered to Nims' office, but not filed with the court. The final paragraph of the brief states "No purpose would be served by remanding this case back for further determination." From this sentence, the court presumes Saunders did not comprehend that the government's offer was to pay his client the full amount to which he was legally entitled. In a similar vein, Saunders also billed for considerable time researching medical questions at times subsequent to the defendant's offer to fully pay plaintiff his benefits.

In response to Saunders' application, the court on August 18, 1989 ordered a hearing to determine the circumstances under which plaintiff signed the fee arrangement, the services Saunders rendered in connection with the disability claim prior to May 27, 1987, and whether sanctions under Rule 11 should be imposed on Saunders.

At the hearing, held December 15, 1989, Krauss and Saunders both testified that they understood each of the two stipulations offered by defendant on May 27, 1987, to be conditioned on acceptance of the other. Saunders testified Krauss had first offered to pay him 25% of any award of benefits prior to May 27, 1987, at the time Krauss rejected an earlier offer of defendant to calculate benefits from a date in 1979. Saunders also conceded that of his original claim for 182 hours, nine hours were improperly included which were spent on the damages claim.

*Saunders' Application for Attorney's Fees*

The Social Security Act, 42 U.S.C. § 406(b)(1), provides:

Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may de-

termine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment[.]

Although Krauss appeared at the hearing to be thoroughly convinced his recovery of past benefits is due to the efforts of Saunders, this court does not share his assessment. Despite his claims to extensive legal research on the subject, other than the obviously unacceptable counter-stipulations he drafted at Krauss' direction, Saunders filed no legal papers in relation to the disability claim. That the court rendered a decision favorable to Krauss is entirely due to defendant's motion to remand the action for calculation and payment of benefits. Saunders, in his failure to comprehend and explain to his client that the government was offering him all the relief it legally could offer, served Krauss poorly. However, he thereby undoubtably helped to increase the accumulation of retroactive benefits from which Saunders now claims a percentage.

Nonetheless, Saunders does seem to have contributed in one respect to plaintiff's recovery. He testified that due to his efforts, defendant agreed to remand the disability claim for calculation of benefits from December 31, 1975, rather than its initial offer to calculate benefits from 1979, the onset period determined at a prior administrative adjudication. The court finds this plausible, given that defendant's initial proposal of May 8, 1988 did not specify a date from which benefits were to be calculated, and all proposed stipulations since May 27, 1988 include plaintiff's alleged onset date.

■ Saunders urges the court to honor what he terms "the contingent fee arrangement" to which his client assented. *See Reply Affidavit*, ¶ 23 (June 9, 1989). While attorneys who represent disability cases *pro bono* are entitled to apply for fees up to 25% of past benefits due their clients under § 406(b)(1), the court notes this does not authorize these attorneys to make "contingency fee" arrangements with assigned clients.

This district's Rules Governing Procedures for Appointment of Attorneys (May 17, 1982) (hereinafter "Appointment Rules"), a copy of which is provided to every firm with an attorney on the *pro bono* panel, requires attorneys to inform the assigned judge if their clients are able to pay for legal services. If so, the assigned judge may then approve a fee arrangement. Appointment Rule 7(d). This Saunders did not do. Though Saunders prepared "counter-stipulations" that asked the defendant to reimburse costs of litigation, these Rules make clear the attorney is responsible for all costs in the case, unless he applies for reimbursement from the Eastern District Civil Litigation Fund. Appointment Rule 6.

■ The court, however, will not consider Saunder's fee application sanctionable. He may have intended defendant reimburse only Krauss for expenses incurred before counsel was appointed. Read in the kindest light, the fee arrangement together with the cover letter provides only what disability clients are already informed, namely, that their court-appointed attorney may be awarded a fee deductible from any retroactive disability benefits found due. Appointment Rule 7(b).

■ Since a contingency fee arrangement is unwarranted in a *pro bono* case such as this, the court will ignore the agreement between Saunders and Krauss, and apply the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), as to what constitutes a "reasonable fee" under § 406. These include the time and labor required, the novelty and difficulty of the legal issues, the skill required of counsel for the task, and customary fees for similar work. *Id.*

■ It is not difficult to agree to an offer of remand for calculation and payment of benefits or to negotiate the date of onset of disability. The court realizes that time was required for Saunders to become familiar with the thirteen year course of

the disability claim. His submitted credentials show he has some familiarity with disability cases, though his legal papers do not suggest expertise. The court determines that fifteen hours is a reasonable period for an attorney familiar with disability cases to accomplish a review of the file and negotiate plaintiff's alleged onset date, compensated at the rate of $100 per hour.

Saunders also applied for fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). The court remanded the disability action on January 27, 1989. Saunders' application, filed on May 9, 1989, is far later than the thirty day period after final judgment required by the act, and contains no allegation that the position of the United States was not substantially justified. 28 U.S.C. § 2412(d)(1)(B). Saunders is not entitled to fees under this statute for the damage claim, in which his client did not prevail.

*Rule 11 Sanctions*

■ Although Saunders' conduct relating to his client's disability claim, while hardly praiseworthy, is not deserving of sanction, his conduct as to the damages action is another matter.

Federal Rule of Civil Procedure 11, as amended in 1983, requires all papers submitted to the court be signed by an attorney or a party. It further provides that such signature

constitutes a certificate by the signer that the signer has read the pleading, or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existent law or a good faith argument for extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause any unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. The rule as quoted above sets out two grounds for sanctions, namely, that the paper is frivolous or is interposed for an improper purpose. *Quadrozzi v. New York*, 127 F.R.D. 63, 78 (S.D.N.Y. 1989). Saunders' submissions in the dam-

age action violated the rule on both grounds.

In assessing whether a paper is not warranted by existing law or a good faith argument for its extension, modification, or reversal, the court does not use hindsight and resolves all doubts in favor of the party who signed the paper. But "where it is patently clear that a claim has absolutely no chance of success under the existing precedents," sanctions must be imposed. *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

It has been settled that the Social Security Act gives a claimant no right against the government for consequential or punitive damages for a denial of disability benefits. *See Watson v. Califano*, 487 F.Supp. 179, 182 (S.D.N.Y.1979), *aff'd mem.*, 622 F.2d 577 (2d Cir.1980). Saunders did not argue that an exception to sovereign immunity existed because the defendant acted beyond its statutory authority or in an unconstitutional manner. *See Krauss v. Bowen*, No. 80 C 2638, 83 C 237, 1989 WL 23933 (E.D.N.Y. March 1, 1989).

In his Memorandum of Law dated January 10, 1989, Saunders argued that defendant's motion to consolidate the damage action with the disability action before the same judge constituted a waiver of sovereign immunity. He cited no legal authority for this proposition. The court has found none. Indeed, the contention is frivolous.

The cases cited in his subsequent submission to the court on this subject, *Panola Land Buyers Association v. Shuman*, 762 F.2d 1550 (11th Cir.1985), and *McNutt v. Hills*, 426 F.Supp. 990 (D.D.C.1977), discuss circumstances where sovereign immunity does not bar nonmonetary relief. Saunders argued as follows:

Although CV–83–0237 complaint listed hardship and compensation for benefits wrongfully denied, I felt that the basis of his claim was in the nature of a mandamus seeking the Court's assistance in enforcement of an order directing the agency to comply with its own rules and regulations, and injunctive relief in the

form of correcting errors in the record, and precluding the repetitious request [sic.] that were warranted by the defendant's loss of plaintiff's file.

The court finds this proposition disingenuous. Saunders made no attempt to amend the complaint to seek injunctive relief. His client's submissions and statements show that he expected monetary relief and in a large amount.

■ An attorney is held to a standard of objectively reasonable conduct, consistent with minimal standards of professional competence. *Greenberg v. Hilton International Co.*, 870 F.2d 926, 934 (2d Cir. 1989). Even were this court to accept that Saunders acted with a pure heart, it would still be required to impose sanctions. *See Eastway Construction Corp.*, 762 F.2d at 254 n. 7.

Where a client insists on asserting claims that are legally specious, an attorney has options other than to comply. The Appointment Rules, for example, specifically provide that an attorney may apply to be relieved if he believes that his client's claims "are not warranted under existing law and cannot be supported by good faith argument for extension, modification or reversal of existing law." Appointment Rule 4(v). *See also* Code of Professional Responsibility, Disciplinary Rule 2–110(C)(1)(a).

The court, however, finds it difficult to believe Saunders' actions were motivated solely by a mistaken belief he was compelled to defend his client's unwarranted claim for compensatory and punitive damages. The defendant's motion to dismiss this claim on the ground of sovereign immunity was first filed on February 20, 1987. At that time it was clear the Assistant United States Attorney would endeavor to remand the disability claim. In November of 1987, Saunders requested the defendant to estimate Krauss' retroactive benefits. Saunders gave his client to believe that the remand for calculation of benefits was contingent on dismissal of the damages claim. Consequently, Saunders and Krauss rejected at least four offers of remand from May 27, 1987 until January 27, 1989, when this court ordered remand.

The implication that Saunders acted with a purpose to swell the pool of retroactive benefits from which to claim a contingency fee is strong. For just such reasons, courts have disfavored honoring contingency fee arrangements for litigation in disability claims. Administrative delay in the final adjudication of disability claims "should not be compounded by incentives for procrastination and delaying tactics on the part of claimant's attorney." *McKittrick v. Gardner*, 378 F.2d 872, 874 (4th Cir.1967); *see also* Fed.R.Civ.P. 11 advisory committee note to 1983 amendment (Rule 11 intended to "discourage dilatory or abusive tactics" and lessen "frivolous claims or defenses").

The court has discretion under Rule 11 to fashion an appropriate sanction, including "reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." Fed.R.Civ.P. 11. Nims estimates his time spent in opposing the damage action to be five hours, which the court determines reasonably billed at $100 per hour. The court may also add to this the cost borne by taxpayers of the court's time spent on a frivolous filing. *See Fischer v. Samuel Montagu, Inc.*, 125 F.R.D. 391, 396 (S.D.N.Y.1989) (citing cases). Though the court does not keep precise time records in the manner of attorneys, the sum of $500 should adequately compensate the time spent as a consequence of Saunders' filing by all court personnel, and vindicate the honor of the court.

*Conclusion*

In regard to Krauss' disability claim, Saunders' application for fees under 42 U.S.C. 406(b)(1) is granted in the amount of $1500. The court sanctions Saunders for his filings in the action for damages under Federal Rule of Civil Procedure 11 in the amount of $1000, $500 to be paid to defendant and $500 to be paid to the court.

So ordered.