Michael BORRELLI, et. al., Plaintiffs,

v.

The SECRETARY OF TREASURY,
et. al., Defendants.

No. 03 Civ. 10089(SHS).

United States District Court,
S.D. New York.

Nov. 16, 2004.

Kevin P. Fitzpatrick, Marschhausen & Fitzpatrick, P.C., Garden City, NY, for Plaintiff.

## OPINION AND ORDER

STEIN, District Judge.

This action represents the latest iteration in a long line of suits challenging the propriety of the establishment and funding of Variable Supplement Funds ("VSFs") by New York City for its police officers, firefighters and other public employees. *See McDonough v. City of New York*, 99 Civ. 12307, 2000 WL 1804137 at *2–4 (S.D.N.Y. Dec.8, 2000) (describing the history of four previous litigations in federal and New York state courts). The grava-

men of the complaint, which asserts 40 claims seeking, *inter alia*, declaratory and injunctive relief, an accounting, and the removal of certain public pension funds trustees, is that the three defendant pension funds—the New York City Employees Retirement System (the "NYCERS"), the New York City Police Pension Fund (the "Police Fund"), and the New York City Fire Department Pension Fund (the "Fire Department Fund")—violated Section 503 of the Internal Revenue Code, 26 U.S.C. § 503, by transferring assets to non-pension entities.

Plaintiffs are "active or retired members of the New York City Employees Retirement System, the Police Department Pension Fund or the Fire Department Pension Fund." (Complaint at ¶ 5). The defendants can be divided into two groups for convenience: the federal defendants—consisting of the Secretary of Treasury and the Commissioner of the Internal Revenue Service in their official capacities; and the New York defendants—consisting of the City of New York, the three pension funds, and various trustees of those funds. Three motions are currently pending before this Court: the federal defendants and the New York defendants have each moved to dismiss the complaint for lack of subject matter jurisdiction and plaintiffs have cross-moved for summary judgment in their favor.

Because plaintiffs have failed to demonstrate the existence of a valid waiver of the federal defendants' sovereign immunity, the motion of those defendants to dismiss the complaint for lack of subject matter jurisdiction is granted. As to the claims asserted against the New York defendants, no independent basis for federal subject matter jurisdiction exists. Furthermore, because the interests of judicial economy and comity also do not favor the retention of supplemental jurisdiction over those

claims pursuant to 28 U.S.C. § 1367, the New York defendants' motion to dismiss the complaint is granted as well. Finally, plaintiffs' cross-motion for summary judgment is dismissed as moot.

## BACKGROUND

The facts relevant to the establishment and operation of VSFs by the City of New York have been set forth in numerous prior judicial opinions and do not require yet another retelling. *See e.g., Castellano v. City of New York*, 142 F.3d 58, 63–66 (2d Cir.1998); *Gagliardo v. Dinkins*, 89 N.Y.2d 62, 68–72, 674 N.E.2d 298, 651 N.Y.S.2d 368 (1996); *Castellano v. Bd. of Trustees of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 754–55 (2d Cir.1991); *Poggi v. City of New York*, 109 A.D.2d 265, 266–71, 491 N.Y.S.2d 331 (1st Dept.1985), *aff'd* 67 N.Y.2d 794, 501 N.Y.S.2d 324, 492 N.E.2d 397 (1986). Instead, this Court will only provide a brief summary of the factual allegations relevant to the resolution of the pending motions and any background information that will assist in understanding the issues at stake.

The NYCERS, the Police Fund, and the Fire Department Fund are, respectively, the retirement funds for New York City employees, police officers, and firefighters. They were established as "qualified trust[s] within the meaning of § 401(a) of the Internal Revenue Code, 26 U.S.C. § 401(a)," thereby entitling their "members and retirees to exemptions from taxes under 26 U.S.C. § 501." (Compl. at ¶¶ 46, 186, 318).

A Variable Supplement Fund provides supplemental benefits "to certain city retirees in addition to regular pension or retirement benefits." *See Castellano v. City of New York*, 142 F.3d at 63 (internal citation omitted). In 1970, the relevant trust instruments for the Police Fund and the Fire Department Fund were amended to create VSFs, (Complaint at ¶¶ 186–88; 318–20), and in 1987 and 1999, similar amendments were made to the trust instrument for the NYCERS. (*Id.* at ¶¶ 46–49). As a result of those amendments, assets were transferred from the three pension funds to both their respective VSFs and defendant New York City. (*Id.* at ¶¶ 50–72; 189–210; 321–341). According to plaintiffs, well over $100 million of assets were removed from the corpus of the three pension funds as the result of those asset transfers.

Plaintiffs allege that those transfers of assets from the three pension funds violated the "exclusive benefit rule" applicable to public pension funds and thus constituted "prohibited transactions" as defined in Sections 401(a)(2) and 503(a)(1)(b) of the Internal Revenue Code, 26 U.S.C. §§ 401(a)(2), 503(a)(1)(b). (Compl. at ¶¶ 54–67; 191–209; 323–340). In January 2003, the City of New York entered into a Closing Agreement with the Internal Revenue Service (the "I.R.S.") relating to the creation and funding of the VSFs at issue.

That Closing Agreement acknowledges that the transfers of assets had been made in violation of 26 U.S.C. § 401(a)(2). (Closing Agreement at 3, attached to Compl. at Exhibit 1). However, the I.R.S. also agreed to "waive any sanction due from the City of New York as a result of the [violation of 26 U.S.C. § 401(a)(2) ]" due to the unexpected financial crisis triggered by the September 11, 2001 attacks. (*Id.* at 4). Thus, the Closing Agreement stipulated that defendant public pension funds would be treated "as not having been disqualified as a result of the [transfers of assets];" instead, as an alternative remedy, the I.R.S. agreed to "treat subsequent contributions by the City of New York to [defendant public pension funds] as repayment of the [assets previously transferred]." (*Id.*) That agreement also

required timely submission of proposed amendments to relevant New York State statutes to ensure future compliance with 26 U.S.C. § 401(a)(2). (*Id.* at 5).

Plaintiffs contend that, by entering into the January 2003 Closing Agreement with New York City, the federal defendants acted beyond the scope of their authority because they were mandated, as a matter of law, to disqualify the tax-exempt status enjoyed by the defendant public pension funds. (Compl. at ¶¶ 147–152) Thus, plaintiffs assert they are entitled to injunctive and declaratory relief to compel the federal defendants to disqualify the funds and to a writ of mandamus to compel the Commissioner of the I.R.S. to issue a letter of determination as to the tax-exempt status of NYCERS.

Plaintiffs further allege that the individual defendants—who were the trustees of the pension funds—violated their fiduciary duties by permitting the transfers of assets from those funds to New York City and the VSFs. (Compl. at ¶¶ 161–64). On that basis, plaintiffs seek an accounting and injunctions compelling those individual defendants to seek reimbursement of the transferred assets as well as determination letters from the I.R.S. (*Id.* at ¶¶ 166–67). Plaintiffs also seek the removal of the individual defendants from the boards of trustees of the funds. (*Id.* at ¶¶ 173–78).

## LEGAL STANDARDS

### A. Sovereign Immunity and Subject Matter Jurisdiction

■ Where a defendant moves to dismiss a complaint for lack of subject matter jurisdiction on the basis of sovereign immunity, "the plaintiff bears the burden of proving by a preponderance of the evidence that jurisdiction exists." *Chayoon v. Chao,* 355 F.3d 141, 143 (2d Cir.2004) (*per curiam*). The principle of sovereign immunity dictates, as the United States Court of Appeals for the Second Circuit

recently noted, "that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Adeleke v. United States,* 355 F.3d 144, 150 (2d Cir.2004). For the purpose of sovereign immunity, a suit maintained against federal employees in their official capacities, as is the case with the federal defendants in this action, is deemed "a suit against the government" itself. *See King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). Thus, a plaintiff must demonstrate that jurisdiction over a claim for declaratory or injunctive relief against a federal employee in his or her official capacity is supported by a specific waiver of sovereign immunity by the United States, which "must be unequivocally expressed in statutory text." *See Adeleke,* 355 F.3d at 150.

### B. Supplemental Jurisdiction

■ Pursuant to 28 U.S.C. § 1367, a district court may exercise supplemental jurisdiction over non-federal claims even after all claims arising under federal law have been dismissed. However, as the Second Circuit emphasized, "[in general] where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Giordano v. City of New York,* 274 F.3d 740, 754 (2d Cir.2001) (quoting *Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir.1998)). In determining whether to retain jurisdiction over pendent state law claims, a court heeds considerations of judicial economy, convenience, fairness and comity. *See Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

## DISCUSSION

### A. Subject Matter Jurisdiction over the Federal Defendants

■ Because this action is being maintained against the federal defendants in

their official capacities, the burden rests upon the plaintiffs to identify specific waivers of sovereign immunity applicable to their claims.[1] Here, plaintiffs have submitted two statutory bases for waivers: first, Section 702 of the Administrative Procedure Act, 5 U.S.C. § 702, which provides for judicial review of administrative actions; and second, 28 U.S.C. § 1361, which provides for jurisdiction to issue writs of mandamus.

### 1. Jurisdiction under the Administrative Procedure Act

■ A specific waiver of the United States' sovereign immunity exists for judicial review of agency action pursuant to 5 U.S.C. § 702. That section provides that an injunctive or declarative action, brought by "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . shall not be dismissed . . . on the ground that it is against the United States." *Id.* This Court's jurisdiction is not unbounded, however. As the Court of Appeals for the Second Circuit recently held, the Administrative Procedure Act (the "APA") "explicitly precludes any such review [where] . . . agency action [at issue] is committed to agency discretion by law." *Riverkeeper, Inc. v. Collins*, 359 F.3d 156, 164 (2d Cir. 2004) (quoting 5 U.S.C. § 701(a)(2)).

■ As a general matter, a type of action is committed to an agency's discretion if "a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* (quoting *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)). Specifically, an agency's decision not to adopt a particular course of enforcement action is presumed to be exempted from judicial review, unless a plaintiff makes a showing that "the substantive statute contains guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 165 (quoting *Chaney*, 470 U.S. at 833, 105 S.Ct. 1649); *see also New York State Elec. & Gas Corp. v. Saranac Power Partners L.P.*, 117 F.Supp.2d 211, 226 (N.D.N.Y. 2000).

■ Here, plaintiffs are not challenging the federal defendants' determination that violations of 26 U.S.C. § 401(a)(2) occurred in connection with the transfers of assets from the pension funds. Rather, they are challenging the federal defendants' choice to enforce 26 U.S.C. § 503 through entering into the January 2003 Closing Agreement instead of disqualifying the pension funds. Thus, the presumption against judicial review applies and plaintiffs bear the burden to rebut that presumption. In an effort to do so, they point to the language of Section 503(a)(1)(B), which states, in relevant part, that a pension fund, such as the defendant funds, "*shall* not be exempt from taxation under section 501(a) if it has engaged in a prohibited transaction . . ." *Id.* (emphasis added). This, according to plaintiffs, clearly illustrates the non-discretionary nature of the federal defendants' duty to disqualify the pension funds from their tax-exempt status.

Plaintiffs have failed to rebut the presumption of the discretionary nature of the federal defendants' choice, however, because Section 503(a)(1)(B) merely sets forth the substantive standard to be enforced, but does not provide sufficient "guidelines for exercise for [their] enforcement power." *See Chaney*, 470 U.S. at

---

1. The federal defendants have also challenged plaintiffs' standing to assert their claims. However, because a "lack of subject matter jurisdiction [due to a valid assertion of sovereign immunity] means that no one can have standing," this Court needs not engage in that inquiry. *See Lunney v. United States*, 319 F.3d 550, 560 (2d Cir.2003).

834, 105 S.Ct. 1649; cf. *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). In other words, 26 U.S.C. § 503(a)(1)(B) tells the I.R.S. *what* standard to enforce, but not *how* to enforce it.

Plaintiffs' reliance on *Watson v. Califano*, 487 F.Supp. 179 (S.D.N.Y.1979) and *MCorp v. Clarke*, 755 F.Supp. 1402 (N.D.Tex.1991) are unavailing for several reasons. First, *Watson* was decided several years prior to the United States Supreme Court's decision in *Heckler v. Chaney*, which set forth the presumption against reviewability of an agency's decision not to enforce. Moreover, in *Watson*, Judge Sweet found that the wide discretion provided to the Secretary of Health, Education and Welfare precluded judicial review pursuant to the APA. *See id.*, 487 F.Supp. at 185–86. In *MCorp v. Clarke*, the court found that judicial review was appropriate where the Federal Deposit Insurance Corporation, "instead of providing a rescue," chose to "devise[ ] a way to bring the entire MBank network under its control." *See id.*, 755 F.Supp. at 1407. Those circumstances are a far cry from the I.R.S.'s choice of how to enforce a particular statutory provision that plaintiffs seek to have the court review here.

In sum, plaintiffs have not demonstrated their entitlement to judicial review of the I.R.S.'s decision to enter into the January 2003 Closing Agreement with New York City, instead of disqualifying the pension funds from tax-exempt status. Thus, the APA does not provide a valid waiver to the federal defendants' assertion of sovereign immunity and cannot support this Court's exercise of subject matter jurisdiction.

*2. Mandamus Jurisdiction*

 28 U.S.C. § 1361 provides a district court with jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Id.* Because mandamus is an "extraordinary writ," the standard for its issuance is strict—in order for a writ of mandamus to issue, a plaintiff must show that (1) the plaintiff has "a right to have the act performed, (2) the defendant is under a clear non-discretionary duty to perform the act requested, and (3) plaintiff has exhausted all other avenues of relief." *City of New York v. Heckler*, 742 F.2d 729, 739 (2d Cir.1984); *see also Caremark Therapeutic Services v. Thompson*, 244 F.Supp.2d 224, 228 (S.D.N.Y.2003).

 Plaintiffs seek a writ of mandamus "compelling the [federal] defendants to issue [a] determination letter on the tax exempt status of the NYCERS pension fund." (Compl. at ¶ 185). They assert that they have complied with the requirements for an appropriate request, including the payment of fees. (*Id.* at ¶ 181). However, as is evident from the text of the relevant internal revenue regulation, 26 C.F.R. § 601.201(*o*), plaintiffs are not entitled to the issuance of the determination letter requested because they are, with respect to NYCERS, neither an "employer" nor a "plan administrator." Moreover, even if they were so entitled, their proper recourse for the I.R.S.'s failure to issue a determination letter would be to seek a declaratory judgment before the United States Tax Court, pursuant to 26 U.S.C. § 7476(a)(2)(B), rather than a writ of mandamus from a district court. *See Wenzel v. Commissioner*, 707 F.2d 694, 696 (2d Cir.1983). In sum, because there is no "clear, non-discretionary duty" on the part of the federal defendants to issue the determination letter sought by plaintiffs, this Court lacks subject matter jurisdiction to contemplate plaintiffs' request for mandamus relief.

B. *Subject Matter Jurisdiction over the New York Defendants*

 Plaintiffs' remaining claims against the New York defendants are based upon "the doctrines of ancillary and pendent jurisdiction," (Compl. at ¶ 1), traditional notions which are subsumed into the concept of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. In light of the dismissal of all claims asserted against the federal defendants, the court is required to "reassess" its jurisdiction over the case and may decline to exercise supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(c)(3). *See Motorola Credit Corp. v. Uzan,* 388 F.3d 39, 56 (2d Cir.2004).

 Plaintiffs urge that the Court should exercise supplemental jurisdiction over the remaining claims because they require interpretation of the Internal Revenue Code to determine the scope of the New York defendants' breach of fiduciary obligations. That contention is, however, without any support in the text of the complaint. Indeed, all the claims asserted against the New York defendants are premised on plaintiffs' contention that, under New York law, New York City and the trustees of the three pension funds breached their fiduciary duty to the beneficiaries of those funds. (Compl. at ¶¶ 161, 172, 175–77, 213, 249, 299, 309–16, 430–33, 440–43). Judicial economy and comity both counsel in favor of declining to exercise supplemental jurisdiction over the state law claims against the New York defendants.

*CONCLUSION*

For the reasons set forth above, the motions of the federal defendants and the New York defendants to dismiss the complaint are granted and plaintiffs' cross-motion for summary judgment is dismissed as moot. The claims against the New York defendants are dismissed without prejudice.

SO ORDERED: